DELORIS SMITH, Widow; CHARLES, CELIA ANN, ANNETTE and HENRY SMITH, Children; HENRY DANIEL SMITH, Deceased v. CENTRAL TRANSPORT and LIBERTY MUTUAL INSURANCE COMPANY

No. 8010IC584

(Filed 7 April 1981)

1. **Master and Servant § 49.1— worker's compensation – tractor-trailer driver as employee of carrier**

The lessor-driver of tractor-trailer equipment, under a trip-lease agreement with an interstate commerce carrier, is deemed to be an employee of the carrier for worker's compensation purposes while operating the equipment under the carrier''s ICC authority; therefore, deceased was an employee of defendant for worker's compensation purposes where he leased his tractor to defendant, defendant had exclusive possession, control and use of the tractor, its name was permanently affixed to the tractor, deceased was required to haul solely for defendant and was required to return defendant's trailer to its terminal within a reasonable time, defendant operated under an ICC franchise which extended to a purchaser in Maryland, where deceased had just made a delivery, defendant filed an Industrial Commission form listing defendant as the employer and indicating that deceased had been employed for eight years, and deceased had a trip-lease agreement with defendant.

2. **Master and Servant § 63— worker's compensation – injury on highway – accident within course and scope of employment**

Evidence was sufficient to support the finding and conclusion of the Industrial Commission that deceased's accident occurred in the course and scope of his employment, though the accident occurred approximately four and a half hours after deceased had delivered his load of chemicals and while he was still in the Washington, D.C. area heading in a direction which would have been opposite to the most direct route back to Wilmington, North Carolina, since it was abundantly clear from the record that defendant operated under an ICC franchise which extended to the customer to whom deceased had made his delivery; it was not unusual for defendant's drivers, including deceased, to wait from 8:30 a.m. until 2:00 p.m. before returning home since the drivers were instructed to call defendant's dispatcher before returning to see if defendant had anything for them to do coming back; defendant's drivers customarily rested, showered, and cleaned up before starting the return trip home; a truck stop located about two miles from the customer to whom deceased had made his delivery provided a restaurant, showers and a lounge for truck drivers; deceased did spend some time at the truck stop after making his delivery to the customer; deceased's truck had a sleeper in it; it was not unusual for truckers to turn around during trips; the bridge where the accident occurred was located between the customer to whom deceased made his delivery and defendant's office in Wilmington; and defendant owned the trailer pulled by deceased, and deceased was required to return the trailer to defendant in a reasonable time.

Smith v. Central Transport

3. **Master and Servant § 58– worker's compensation – employee's death not caused by intoxication**

   The Industrial Commission did not err in finding and concluding that the accident in question was caused by a small pickup truck pulling in front of deceased, nor did it err in finding and concluding that deceased's death was not proximately caused by intoxication, since defendant completed an Industrial Commission form on the day of the accident stating that deceased lost control of his tractor-trailer when he "tried to prevent hitting a truck that had cut him off"; plaintiffs were not required to prove that deceased was not intoxicated; and although the Commission found as a fact that deceased had a blood alcohol content of between .14 and .16 per cent at the time of his death, the Commission found and concluded that death was not proximately caused by intoxication.

APPEAL by defendant, Central Transport, and defendant Liberty Mutual Insurance Company, from Order of the North Carolina Industrial Commission entered 20 December 1979. Heard in the Court of Appeals 27 January 1981.

Henry Daniel Smith (deceased) was killed in an accident while driving a large tractor-trailer rig near Washington, D.C. on 14 March 1978. After a full hearing, Chief Deputy Commissioner Forrest H. Shuford, II, found the death to be compensable and awarded compensation to the plaintiffs — the widow and children of the deceased. In an Order dated 19 December 1979, the North Carolina Industrial Commission (Commission) affirmed the opinion and award of Chief Deputy Commissioner Shuford. Defendants contend that no employer-employee relationship existed at the time of the accident; that deceased was not in the course and scope of his employment at the time of the accident; and that deceased's state of intoxication at the time of the accident precludes any award of compensation.

In December 1975, the deceased entered into a written contract with Central Transport, Inc. (Central) wherein deceased agreed to lease to Central his Peterbilt Tractor and to transport certain chemical materials for Central in Central's trailers or tanks. The deceased was to receive six percent of the revenue earned on materials which he delivered. The long term lease agreement provided:

> The leased equipment under this agreement is in the exclusive possession, control and use of the authorized carrier LESSEE and ... the LESSEE assumes full responsibility

in respect to the equipment it is operating, to the public, the shippers, the Interstate Commerce Commission, and the Federal Highway Administration.

Central leased deceased's tractor on a full time basis and a condition of the lease was that deceased drive exclusively for Central. Central bought the license plate for deceased's tractor, and Central's emblem and name were permanently affixed to the side of deceased's tractor. Deceased was required to call Central's terminal to get instuctions on deliveries, and Central's dispatcher directed deceased to various pick-up and delivery points under the ICC franchise authority of Central.

In accordance with their contract, Central's dispatcher assigned deceased to take a load of chemicals to Mineral Pigments Corporation (Mineral) in Beltsville, Maryland on 14 March 1978. Mineral is located just northeast of the District of Columbia. Deceased arrived at Mineral with the chemicals during the night of 13-14 March 1978 and went to sleep in the tractor. He was awakened by a maintenance man at Mineral at approximately 7:30 a.m., and the delivery was accomplished. Deceased left the premises of Mineral around 8:45 a.m. During the morning hours of 14 March 1978, after leaving Mineral, deceased stopped at Transitruck Center, a truck stop located about two miles from Mineral. There he purchased diesel fuel, a diesel fuel additive, a stomach antacid, and rubber tie down straps. The truck stop was equipped with restrooms and lounge facilities including shower baths for the truckers. It is unknown how long deceased remained at the truck stop.

At approximately 12:45 p.m. on 14 March 1978, deceased approached Cabin John Bridge which bridged the Potomac on I-495 northwest of the District of Columbia. Deceased was in his tractor-trailer unit heading in a northerly direction at a speed of 65 to 70 m.p.h. It was raining and the lights of the truck were burning. Deceased drove in the extreme left lane of the three northbound lanes on the northbound portion of the bridge. A small white pickup truck was also crossing the bridge at about the same speed as deceased was driving. There was evidence that this small white pickup truck pulled in front of deceased, who then suddenly turned his tractor-trailer sharply to the right. The tractor-trailer unit started skidding sideways down the bridge, came in contact with at least two other vehicles

crossing the bridge, jackknifed and went over the side of the bridge. This caused fatal injuries to the deceased. Deceased had a blood alcoholic content of between .14 percent and .16 percent at the time of his death. The Commission found, however, that death was not proximately caused by intoxication and that the accident was one arising out of and in the course of employment.

The terminal manager for Central completed Industrial Commission Form 19 on 14 March 1978, the day of the accident, showing Central as the Employer and describing the accident in these words:

When driver tried to prevent hitting a truck that had cut him off, he lost control of his tractor-trailer and he hit the side of the bridge and went over the side into a sand bar.

This form was filed by defendant with the North Carolina Industrial Commission and was offered and received into evidence without objection.

*Smith, Anderson, Blount, Dorsett, Mitchell & Jernigan by James G. Billings for defendant appellants.*

*Marshall, Williams, Gorham & Brawley, by Lonnie B. Williams, and Addison Hewlett, Jr. for plaintiff appellees.*

BECTON, Judge.

[1] Defendant first argues that the Commission erred in finding as a fact and concluding as law that an employer-employee relationship existed. Appellate review of an award of the Industrial Commission is limited to reviewing (1) whether there was competent evidence before the Commission to support its findings; and (2) whether such findings support its legal conclusions. *Perry v. Furniture Company*, 296 N.C. 88, 249 S.E. 2d 397 (1978); *McRae v. Wall*, 260 N.C. 576, 133 S.E. 2d 220 (1963).

The record contains ample evidence of the employer-employee relationship. By way of example, Industrial Commission Form 19 filed by the defendants lists Central as the employer and indicates that the deceased had been employed for eight years working an average of seventy hours per week with an average weekly wage of $350.00. Furthermore, the terms of the contract and the course of conduct between Central and deceased clearly establish the following facts from which the

Commission could have concluded that an employee-employer relationship existed: Central had exclusive possession, control and use of the tractor, and its name was permanently affixed to the tractor; the deceased was required to haul solely for Central and was required to return Central's trailer to Central's terminal within a reasonable time; Central operated under an ICC franchise that extended to Mineral in Beltville, Maryland; deceased, as well as other drivers, was instructed to call Central's dispatcher before returning home to see if Central had anything for them to do on the return trip ("Normally, they would call about 6:00 o'clock p.m. in the evening to determine whether or not we had a trip for [them]. ... [They would call] from the road or home or wherever they might be."); and Central advertised for trip-lease operators, listing as benefits, workman compensation coverage.

Moreover, the North Carolina Supreme Court has made an exception to the general rule that one who works according to his own judgment, without being subject to control except as to the result of his work, is an independent contractor, in cases involving trip leases under a lessee's ICC authority. Thus, it has been held that the lessor-driver, under a trip-lease agreement with an interstate commerce carrier, is deemed to be an employee of the carrier, for workman's compensation purposes, while operating the equipment under the carrier's ICC authority. *Watkins v. Murrow*, 253 N.C. 652, 118 S.E. 2d 5 (1961); *Suggs v. Truck Lines*, 253 N.C. 148, 116 S.E. 2d 359 (1960); *McGill v. Freight*, 245 N.C. 469, 96 S.E. 2d 267 (1957); *Roth v. McCord*, 232 N.C. 678, 62 S.E. 2d 64 (1950); *Brown v. Truck Lines*, 227 N.C. 299, 42 S.E. 2d 71 (1947). The deceased who was the lessor-driver in this case had a trip-lease agreement with Central, an interstate commerce carrier, and was an employee of Central for workman's compensation purposes.

[2] Having determined that the record contains facts sufficient to support the Commission's finding and conclusion that an employer-employee relationship existed, we turn now to Central's next contention — that the Commission erred in finding and concluding that deceased was in the course and scope of his employment at the time of the accident.

Our courts have held that an accident arises out of employment when it occurs while the employee is engaged in some

activity or duty which he is authorized to undertake, and which is calculated to further, indirectly or directly, the employer's business. *Martin v. Georgia-Pacific Corp.*, 5 N.C. App. 37, 167 S.E. 2d 790 (1969); *Clark v. Burton Lines*, 272 N.C. 433, 158 S.E. 2d 493 (1968); *Perry v. Bakeries Co.*, 262 N.C. 272, 136 S.E. 2d 674 (1964). Our courts have never held that an employee has to be injured while transporting or unloading goods of his employer in order to receive compensation. Indeed, North Carolina has long held as compensable injuries sustained by employees (1) while on the way to or returning from work when the employer provides the means of transportation, *Perry v. Bakeries Co., supra; see also Battle v. Electric Co.*, 15 N.C. App. 246, 189 S.E. 2d 788, *cert. denied*, 281 N.C. 755, 191 S.E. 2d 353 (1972); (2) while sleeping in hotels or eating in restaurants away from home, *Martin v. Georgia-Pacific Corp., supra;* and (3) while awaiting another driver before returning home, *Clark v. Burton Lines, supra.*

It is true, as Central argues, that the accident in which deceased was killed occurred approximately four and a half hours after he had delivered his load of chemicals, and while he was still in the Washington, D.C. area heading in a direction which would have been opposite to the most direct route back to Wilmington, North Carolina. However, it is abundantly clear from the record (1) that Central operated under an ICC franchise which extended to Mineral Pigments; (2) that it was not unusual for Central's drivers, including deceased, to wait from 8:30 a.m. until 2:00 p.m. before returning home since the drivers were instructed to call Central's dispatcher before returning to see if Central "had anything for them to do coming back;" (3) that Central's drivers customarily rested, showered and cleaned up before starting the return trip home; (4) that Transitruck Center, which is about two miles from Mineral Pigments, provided a restaurant, showers and a lounge for truck drivers; (5) that deceased's truck had a sleeper in it; (6) that it was not unusual for truckers to turn around during trips; (7) that Cabin John Bridge, where the accident occurred, is between Mineral Pigments and Central's office in Wilmington; and (8) that Central owned the trailer pulled by the deceased, and deceased was required to return the trailer to Central in a reasonable time.

Employees whose work entails travel away from the employer's premises are held to be within the course of their em-

ployment continuously during the trip except when a distinct departure on a personal errand is shown. *Martin v. Georgia-Pacific Corp., supra; Clark v. Burton Lines, supra; Brewer v. Trucking Company,* 256 N.C. 175, 123 S.E. 2d 608 (1962); *Jackson v. Creamery,* 202 N.C. 196, 162 S.E. 359 (1932).

In *Martin v. Georgia-Pacific Corp., supra,* Martin was attending a one-week training program in a distant city. After class, Martin left his hotel to look at some yachts and then proceeded to a steak house for dinner. An automobile veered into a safety island, resulting in Martin's death. The *Martin* court said:

> Martin's death was by accident. The main question presented for decision by defendant's assignments of error is whether the evidence was sufficient to support the finding and conclusion that the injury by accident arose out of and in the course of employment. G.S. 97-2(6).

> In 1 Larson, Workmen's Compensation Law, § 25.00, p. 443, it is said, "Employees whose work entails travel away from the employer's premises are held in the majority of jurisdictions to be within the course of their employment continuously during the trip, except when a distinct departure on a personal errand is shown. Thus, injuries arising out of the necessity of sleeping in hotels or eating in restaurants away from home are usually held compensable." ... This seems to be the majority rule based upon an analysis of cases from various parts of the United States. ...

> We are of the opinion and so hold that while Martin was on his way to eat the evening meal, under the circumstances of this case, that he was at a place where he might reasonably be at such time and doing what he, as an employee, might reasonably be expected to do, and that in so doing he was acting in the course of and scope of his employment.

5 N.C. App. at 41-44, 167 S.E. 2d at 793-94.

Ordinarily, when an employee operates a vehicle in the course of his employment, an injury from the risks of the road arises out of and in the course of the employment. *Allred v. Allred-Gardner, Inc.,* 253 N.C. 554, 117 S.E. 2d 476 (1960); *Perkins v. Sprott,* 207 N.C. 462, 177 S.E. 404 (1934). In this case, the

Smith v. Central Transport

deceased was required to drive his tractor which he leased to Central, pull Central's trailer loaded with chemicals to Maryland, and then return the trailer within a reasonable time. Since his work entailed travel away from the employer's premises, and he was killed while driving for Central, the deceased is held "to be within the course of [his] employment continuously during the trip," 5 N.C. App. at 41, 167 S.E. 2d at 793, since a distinct departure on a personal errand was not shown. The Commission's finding and conclusion that deceased was in the course and scope of his employment at the time of the accident is without error.

[3] Defendants next argue that the Commission erred in finding and concluding that the accident was caused by a small white pickup truck pulling in front of deceased and further erred in finding and concluding that deceased's death was not proximately caused by intoxication.

The plaintiffs were not required to offer evidence as to the precise way in which the accident happened. *Battle v. Electric Co., supra.* Consequently, it is not an essential finding that the accident occurred because of a white pickup truck. However, there is competent evidence in the record in support of the finding. Industrial Commission Form 19 completed by defendants and dated the very day of the accident, while not specifically mentioning *white pickup*, states that deceased lost control of his tractor-trailer when he "tried to prevent hitting a truck that had cut him off." This account, offered and received in evidence without objection, preceded any investigation by anyone representing the plaintiffs. Moreover, there was evidence from several witnesses who were deposed from which the Commission could have found that a white pickup was involved in the accident.

The plaintiffs were not required to prove that deceased was not intoxicated. G.S. 97-12 placed the burden of defense based upon intoxication upon the defendants to prove intoxication and to prove that death was proximately caused thereby.

Although the Commission found as a fact that deceased had a blood alcohol content of between .14 percent and .16 percent at the time of his death, the Commission found and concluded that death was not proximately caused by intoxication. This Court is bound by that finding. *Yates v. Hajoca Corp.,* 1 N.C. App. 553,

162 S.E. 2d 119 (1968). *See also Inscoe v. Industries, Inc.*, 292 N.C. 210, 232 S.E. 2d 449 (1977); *Lassiter v. Chapel Hill*, 15 N.C. App. 98, 189 S.E. 2d 769 (1972).

We have carefully reviewed defendants' other assignments of error concerning the finding of "borderline intoxication," the admission of hearsay testimony of the witness Dorsey and the Commissioner's abuse of discretion in denying defendants' motion to take further depositions. We find no prejudicial error in those assignments of error. The opinion and award of the North Carolina Industrial Commission is

Affirmed.

Chief Judge MORRIS and Judge VAUGHN concur.