The undersigned have reviewed the prior Opinion and Award based upon the record of the proceedings before Deputy Commissioner Hoag and the briefs and oral arguments before the Full Commission. The appealing party has not shown good ground to reconsider the evidence, receive further evidence, rehear the parties or their representatives, or amend the Opinion and Award, except for modifications of the average weekly wage and some other minor revisions.
Since the hearing before the Deputy Commissioner, plaintiff has recovered $102,000.00 in a settlement of a lawsuit filed against the third-party tortfeasor in the subject automobile accident. Defendant has moved the Commission for a credit in the amount of the recovery from the third-party tortfeasor, pursuant to N.C. Gen. Stat. 97-10.2. In the Order Disbursing Settlement Proceeds dated June 26, 1996, Lincoln County Superior Court Judge Jesse B. Caldwell, III, ordered that "the employer/workers (sic) compensation insurance carrier, Lincoln County Schools and State Board of Education shall recover nothing towards any subrogation claim under N.C.G.S. 97-10.2." Defendant failed to appeal the decision of Judge Caldwell to the North Carolina Court of Appeals. Therefore, defendant's motion for a credit in the amount of the third-party recovery is hereby DENIED.
* * * * * * * * * *
The Full Commission finds as fact and concludes as matters of law the following, which were entered into by the parties at the hearing as:
STIPULATIONS
1. The parties are subject to and bound by the provisions of the North Carolina Workers' Compensation Act.
2. An employer-employee relationship existed between plaintiff and defendant-employer at all relevant times.
3. The defendant is self-insured.
4. During the 52 weeks preceding June 3, 1992, plaintiff earned the sum of $21,933.69 while in the employ of the defendant pursuant to the Form 22 completed by the employer on October 5, 1994, which was admitted into evidence at the hearing of this matter.
5. The date of the alleged injury which is the subject of this claim in this case is June 3, 1992.
6. The parties stipulated to the admissibility of the following medical records of plaintiff for the purposes of the hearing:
a. Lincoln County Hospital notes, dated 6-3-92.
b. Sterling Emergency Physician's bill, dated 6-3-92.
 c. Presbyterian Hospital notes, dated 6-3-92 through 6-12-92.
 d. Mecklenburg Radiology notes, dated 6-3-92 through 6-9-92.
 e. Dr. Robin Joan Hennessy notes, dated 6-3-92 through 8-5-93.
 f. Randolph Internal Medicine notes, dated 6-4-92 through 6-6-92.
 g. Presbyterian Orthopaedics notes, dated 6-4-92 through 8-3-92.
h. Char Meck Ambulance notes, dated 6-12-92.
 i. Lincoln County Home Health Agency notes, dated 6-18-92 through 4-21-93.
 j. Duke University Clinic notes, dated 8-16-93 through 3-8-94.
k. Blue Ridge Radiology notes, dated 6-3-92.
 l. Department of Prosthetics and Orthotics notes, dated 8-30-93.
 m. Prescription drug receipts, dated 6-12-92 through 9-16-92.
7. The issues to be determined are:
 a. Did plaintiff sustain an injury arising out of and in the course and scope of her employment with the Lincoln County Board of Education?
 b. To what amounts of temporary total and temporary partial disability and disfigurement benefits is plaintiff entitled?
 c. Is defendant owed a credit due to plaintiff's receipt of benefits from the Disability Income Plan of North Carolina?
* * * * * * * * * * *
The Full Commission adopts the findings of fact found by the Deputy Commissioner as follows:
FINDINGS OF FACT
1. Plaintiff was thirty years old at the time of the hearing before the Deputy Commissioner, married, with two children aged six and eight. Plaintiff was educated at the University of North Carolina at Greensboro, Sacred Heart College, and Belmont Abbey. Plaintiff was an education major and has taught kindergarten on a contract basis at elementary schools. Prior to being employed by the Lincoln County Board of Education, she taught for four years. Plaintiff had contracted to teach with Lincoln County Board of Education during the regular school year of 1992 and also for summer school.
2. On Wednesday, June 3, 1992, at or near the end of the school year, plaintiff was employed as a kindergarten teacher at Asbury Elementary School in Lincoln County. On that day, plaintiff had planned a program for her students in the auditorium to be followed immediately by a school picnic on the school grounds.
3. In the early afternoon of that day, plaintiff, in accordance with school procedure, went to the principal's office to speak with Gerald Schrum, the principal, to notify him that she wanted to leave the school grounds, a routine requirement of all employees to assure that students were supervised at all times. As Mr. Schrum was not in his office, plaintiff spoke with the school secretary, Ms. Carolyn Dysart. Plaintiff asked permission from Ms. Dysart to go to the bank, which was granted. When Mr. Schrum returned, Ms. Dysart informed him of plaintiff's absence.
4. The after school picnic plaintiff planned for her class and the volunteers who had assisted her with the students during the school year was predominantly organized by plaintiff with the assistance of some parents. Plaintiff had purchased supplies for the party which she had placed in her vehicle. During the day of June 3, 1992, plaintiff realized she needed an extra present for one of the volunteers as well as additional cups, spoons and other materials for the party.
5. Plaintiff contacted her relative Monique Seronce to procure the desired items for her. However, plaintiff realized that she had insufficient funds in the bank to cover a purchase of the desired items. Thus plaintiff withdrew her request for Monique to run the errands for her as the bank would not permit Ms. Seronce to withdraw money from plaintiff's savings account.
6. After obtaining permission from Ms. Dysart, plaintiff left to obtain the supplies. She intended first to stop by the bank and then continue on to a Wal-Mart located two or three miles from the school. Upon further thought, plaintiff decided she would avoid going to the bank since her checkbook was in the car, and instead "float" a check to cover payment for the items. She proceeded directly to the Wal-Mart.
7. On route to the Wal-Mart, while driving in a northerly direction on Huss Street at 1:55 p.m., plaintiff was struck by a vehicle driven by Stacy Pitsikoulis. Pitsikoulis ran through a stop sign and into the lane of plaintiff's travel, causing a collision and resulting in serious and permanent injuries to plaintiff.
8. At the time of the accident, plaintiff's car contained three or four bread racks on which were located bags of bread and other miscellaneous supplies for the planned children's party. In addition, a list was found by plaintiff's uncle in the car the next day, indicating the materials plaintiff intended to buy for the party while she was at Wal-Mart. The list was in plaintiff's handwriting.
9. Plaintiff was initially taken to Lincoln County Hospital for treatment and was then transferred to Presbyterian Hospital in Charlotte. She remained hospitalized from June 3, 1992 to June 12, 1992.
10. Plaintiff suffered bi-malleolar ankle fractures, a metatarsal fracture and a degloving injury to her forehead and scalp. She intermittently had physical therapy and continued medical treatment for the next year.
11. Dr. Presley Gilbert assigned plaintiff a permanent partial impairment rating of 45% to plaintiff's right foot, including her right foot and ankle. In addition, Dr. Gilbert assigned plaintiff a permanent partial impairment rating of 10% of the left foot because of continuing pain and limitation of motion, as well as the prospects of additional arthritic changes.
12. Plaintiff has undergone two operations on her ankles and will have to have additional surgery.
13. Plaintiff sustained severe facial lacerations to the left upper and lower eyelids with a degloving injury including the entire frontalis muscles and morbilli muscles going from her left lower eyelid across her upper eyelid on the left, across the nasal radius which was pulled back and avulsed from her skin, leaving light permanent scarring clearly visible at a distance of approximately one foot but invisible from six to ten feet. Plaintiff, as viewed in court, has a scar across the bridge of her nose going from eye to eye, on top of the bridge about one-half inch long. Plaintiff has additional scarring on either side of her forehead and going about two to two and one-half (2-2 1/2) inches down the side of her forehead and some very slight markings just along her forehead. These scars are visible from a distance of about three feet and could be considered repulsive to other people. Therefore, plaintiff has suffered serious and permanent bodily disfigurement to such an extent that it may be reasonably presumed to lessen her future opportunities for remunerative employment and so reduce her future earning capacity. The equitable compensation for this serious bodily disfigurement is $7,500.00.
14. In addition, plaintiff had numerous semi-circular flaps and triangular flaps, many fragments and puncture wounds. Plaintiff immediately underwent surgery for all of these injuries when she was admitted to Presbyterian Hospital.
15. Plaintiff sustained a metatarsal fracture and underwent open reduction internal fixation of her right and left bi-malleolar fractures, necessitating a portion of the fibular being excised. In addition, plaintiff saw Dr. Scully at Duke University where she received injections of cortisone to her ankles.
16. Plaintiff received home health care under the direction of Dr. Presley Gilbert, as well as orthopedic equipment including a hospital bed, wheelchair, walker, leg braces, and a cane.
17. As a result of her injuries sustained at the time of the accident, plaintiff has sustained permanent damage to the forehead and eyelid muscles and surrounding nerves. Plaintiff will have premature aging on her forehead and may not retain symmetric function of her brows and movement of her forehead. In addition, there is a probability that she will develop ptosis on the left eyelid. With aging and time, some of the attachments may attenuate and pull behind the globe of the eye and plaintiff may not be able to spontaneously lift one lid. Plaintiff's left upper eyelid movement feels irregular to plaintiff, although visually does not appear irregular. Sometimes plaintiff has problems with ingrown eyelashes. In addition, it may be required that cysts be removed in the future. Plaintiff desires additional reconstructive surgery of the face.
18. Plaintiff was not able to return to work or to earn wages of any kind in the two year period between her injury and return to work at the beginning of the 1994-1995 school year. She was totally disabled for a period of 114 4/7 weeks from June 3, 1992 to August 15, 1994.
19. During the time period plaintiff was out of work, plaintiff received benefits from the totally State-funded Disability Income Plan of North Carolina.
20. Plaintiff incurred medical expenses totaling $47,770.89 as a result of the injury of June 3, 1992. Of these medical expenses, the State of North Carolina, through the employee State Health Plan, has paid all but $5,427.54, which was paid by plaintiff personally.
21. Plaintiff made a claim upon the Disability Income Plan of North Carolina. She received fifty (50) percent of her salary from August 3, 1992 until August 2, 1994, for a total of $22,196.00.
22. Defendant filed a Form 19 with the Industrial Commission which states the cause of plaintiff's injury as occurring while she was "in route to get additional cookout supplies." The Form 19 was admitted into evidence at the hearing of this case.
23. As of June 3, 1992, plaintiff had a contract for professional services in the public schools of the Lincoln County School Administrative Unit to teach at an annual salary of $21,933.69. Plaintiff also had a contract with the school system to teach during the summer of 1992 in the amount of $1,682.54. If plaintiff had not been injured on June 3, 1992, she would have been able to fulfill the terms of that contract and it can be inferred from her past history of employment that she would also have worked as a kindergarten teacher during the school years of 1993 and 1994.
24. Plaintiff was paid her salary of $21,933.69 over a period of 52 weeks, receiving checks in July and August as installment pay. In light of the fact that plaintiff did not work during the summer previous to her injury, her average weekly wage is $21,933.69 divided by 52. Plaintiff's average weekly wage is $421.80, which yields a compensation rate of $281.20.
25. Although plaintiff's automobile accident occurred in close proximity to the school, Mr. Schrum did not undertake any independent investigation aside from having a conversation with Ms. Dysart. He did not discuss the accident or plaintiff's conduct prior to the accident with any other staff members. There was no documentation regarding the accident contained in plaintiff's personnel file. No information was sent to the administrative offices of Lincoln County Schools with regard to whether or not plaintiff was entitled to Workers' Compensation benefits.
26. Plaintiff returned to employment with defendant-school system at the beginning of the 1994-1995 school year. She has continued her regular employment with the Lincoln School since that time at a wage equal to or exceeding her wage on the date of the injury.
27. Plaintiff did not file a written notice of her injury by accident within thirty days after the occurrence as required by N.C. Gen. Stat. § 97-92. Her employer, Mr. Schrum, and others at the school were aware of the accident and therefore were not prejudiced. When plaintiff's attorney entered the case on May 11, 1994, less than two years later, he did file a report of injury. The delay in filing a Form 18 was not prejudicial to the defendant-employer.
28. Plaintiff received permission to leave the school. By leaving the school she was to purchase items to be used during the afternoon party sponsored by the school and therefore she was directly furthering the business of the school. Purchases for the party would have accrued to the benefit of the students and the school. Even assuming arguendo that plaintiff had stopped off at the bank prior to going to Wal-Mart to pick up supplies for the school picnic, she would have been on a special errand for the school.
29. By attempting to perform a special errand for the school, plaintiff's employment continued when she left the school and on the route to Wal-Mart. The special errand in which plaintiff was engaged at the time of the automobile accident was fairly traceable to her employment at the school with defendant-employer and was of benefit to defendant-employer.
* * * * * * * * * * *
Based upon the findings of fact, the Full Commission concludes as follows:
CONCLUSIONS OF LAW
1. On June 3, 1992, plaintiff sustained an injury by accident arising out of and in the course and scope of her employment with defendant-employer. N.C. Gen. Stat. § 97-2(6).
2. Driving during the school day to a store for the specific purpose of buying materials to be utilized for the benefit of students during a picnic later that afternoon was an incident of school business and one which was for the purpose of benefiting the school and its students. Harless v. Flynn,1 N.C. App. 448, 162 S.E.2d 47 (1968); Smith v. Central Transportation,51 N.C. App. 316, 276 S.E.2d 751 (1981); Watkins v. City ofWilmington, 290 N.C. 276, 225 S.E.2d 577 (1976).
3. Plaintiff's actions on June 3, 1992 did not constitute a departure from the scope of her employment. Hoyle v. IsenhourBrick Tile Co., 306 N.C. 248, 293 S.E.2d 196 (1982). Plaintiff endeavored to do something which she was not specifically ordered to do but which activity would have benefited the defendant-employer. Parker v. Burlington Industries, 78 N.C. App. 517,337 S.E.2d 589 (1985).
4. Plaintiff sustained an injury by accident while driving on an errand to purchase supplies for students in Lincoln County Schools. Such act constituted a "special errand" and thus plaintiff's accident and injuries sustained therein were incurred in the course and scope of her employment. Massey v. Board ofEducation, 204 N.C. 193, 167 S.E.2d 695 (1933); N.C. Gen. Stat. § 97-2(6).
5. Defendant school system was put on notice of the accident on the date of the accident and suffered no prejudice by the failure of plaintiff to apply for Workers' Compensation benefits until some time later. Booker v. Duke Medical Center, 297 N.C. 548 [297 N.C. 458], 256 S.E.2d 189 (1979).
6. As a result of the compensable injury, plaintiff is entitled to temporary total disability at the rate of $281.20 per week from the date of her injury on June 3, 1992 and continuing through the date on which she returned to teach school August 15, 1995, a period of 114 4/7 weeks.
7. Defendant is entitled to a dollar for dollar credit for the gross benefits paid to plaintiff by the Disability Income Plan of North Carolina funded entirely by the State during the period she was out of work. N.C. Gen. Stat. § 97-42.
8. Plaintiff's average weekly wage is her total salary earned in the 52 weeks prior to her injury divided by 52. Plaintiff's average weekly wage was $421.80 which yields a compensation rate of $281.20. McAninch v. Buncombe CountySchools, 122 N.C. App. 679, 471 S.E.2d 441 (1996).
9. As a result of her injury by accident on June 3, 1992, plaintiff is entitled to permanent partial disability for 64.8 weeks at the compensation rate of $281.20 per week based upon plaintiff's 45% disability rating to her right foot and ankle, subject to the attorney's fee hereinafter set forth. N.C. Gen. Stat. § 97-31(14).
10. Plaintiff is entitled to receive permanent partial disability benefits at the compensation rate of $281.20 for a period of 14.4 weeks for the 10% impairment rating to her left foot and ankle, subject to an attorney's fee hereinafter set forth. Such benefits have accrued and shall be paid in a lump sum. N.C. Gen. Stat. § 97-31(14).
11. As a result of the compensable injury, plaintiff is entitled to receive the sum of $7,500.00 for serious permanent disfigurement and scarring to her face. N.C. Gen. Stat. § 97-31(21).
12. As a result of her injury by accident on June 3, 1992, plaintiff sustained permanent damage to the forehead and eyelid muscles and nerves of plaintiff's face, which are important parts of the body and for which she is entitled to compensation in the amount of $7,500.00. N.C. Gen. Stat. § 97-31(24).
13. As a result of her injury by accident of June 3, 1992, defendant-employer shall pay plaintiff's reasonable and necessary medical expenses incurred as a result of her injury by accident, including $5,427.54, which represents the medical bills paid personally by plaintiff. Little v. Penn Ventilator Co., 317 N.C. 206,345 S.E.2d 204 (1988). Plaintiff is entitled to additional medical treatment which will effect a cure or give relief. N.C. Gen. Stat. § 97-25.
14. Plaintiff's attorney shall be entitled to 25% of the lump sum payments due to plaintiff under paragraphs 6, 9 and 10 (after the credit in paragraph 7 is deducted).
* * * * * * * * * * *
Based on the foregoing findings of fact and conclusions of law, the Full Commission affirms the holding of the Deputy Commissioner and enters the following:
AWARD
1. Defendant-employer shall pay plaintiff temporary total disability compensation at the rate of $281.20 per week, beginning June 3, 1992 and continuing until August 15, 1994, for a total of 114 4/7 weeks, to be paid in a lump sum subject to an attorney's fee as hereinafter set forth. This award is subject to a dollar for dollar credit for the gross amount of disability benefits to which the employer is entitled as a result of the payments by the Disability Income Plan of North Carolina.
2. Defendant-employer shall pay plaintiff at a rate of $281.20 for 64.8 weeks as permanent partial disability for plaintiff's 45% disability rating to her right foot and ankle, subject to an attorney's fee as hereinafter set forth.
3. Defendant-employer shall pay plaintiff at the rate of $281.20 for 14.4 weeks as permanent partial disability for plaintiff's 10% disability rating to her left foot and ankle, subject to an attorney's fee hereinafter set forth.
4. Defendant-employer shall pay to plaintiff the sum of $7,500.00 for permanent disfigurement and scarring to plaintiff's face.
5. Defendant-employer shall pay to plaintiff the sum of $7,500.00 for permanent injury to the forehead and eyelid muscles and nerves of plaintiff's face.
6. Defendant-employer shall pay all medical expenses incurred by plaintiff as a result of her injury by accident, including the sum of $5,427.54 which has been paid by plaintiff personally.
7. Plaintiff is entitled to additional medical treatment required as a result of her injuries which tends to give relief or effect a cure.
8. A reasonable attorney's fee of 25% shall be paid directly to plaintiff's attorney as follows: from the lump sum payments awarded in paragraphs 1, 2 and 3 above (minus the credit due defendant pursuant to N.C. Gen. Stat. § 97-42).
9. Defendant shall pay the costs of this appeal.
This is the 7th day of July, 1997.
 S/ ____________________ LAURA KRANIFELD MAVRETIC COMMISSIONER
CONCURRING:
S/ _______________ DIANNE C. SELLERS COMMISSIONER
S/ _______________ THOMAS J. BOLCH COMMISSIONER