***********
This matter was reviewed by the Full Commission based upon the record of the proceedings before Deputy Commissioner Glenn, along with the briefs and arguments on appeal. The appealing party has not shown good ground to receive further evidence or to amend the prior Opinion and Award. Accordingly, the Full Commission adopts and affirms the Deputy Commissioner's holding and enters the following Opinion and Award.
 ***********
The Full Commission finds as fact and concludes as matters of law the following, which were entered by the parties at the hearing on 6 November 2002 as:
 STIPULATIONS
1. Plaintiff's first day of work for the defendant-employer was January 5, 2001.
2. Plaintiff was employed by defendant-employer as a home health care nurse.
3. Plaintiff's mileage reimbursement with defendant-employer was as outlined on page 233 of stipulated Exhibit 1.
4. On January 5, 2001, January 6, 2001, and January 7, 2001, the plaintiff was working at patients' residences as indicated on pages 230-31 of stipulated Exhibit 1.
5. Plaintiff's earnings for the three days she worked for defendant-employer are as outlined on page 232 of stipulated Exhibit 1.
6. If plaintiff were called to testify, she would testify that, on January 8, 2001, she was involved in a motor vehicle accident. She was on her way to see a patient, Dillon White, at 3236 Sourwood Ridge Road, Lenoir, NC. She had extra time so she decided to drop off time slips at the defendant-employer's office when she was involved in the accident.
7. Pursuant to contract, plaintiff would be reimbursed as per page 233 of stipulated Exhibit 1 for mileage to a patient's residence in Lenoir. Plaintiff would not be reimbursed for mileage to drop off time slips at defendant employer's office.
8. Plaintiff traveled from her residence at 162 KOA Lane, Statesville, NC to the accident site at the intersection of Morganton Boulevard and Complex Road in Lenoir, NC.
9. On January 8, 2001, plaintiff was still in her orientation period with the defendant-employer. Plaintiff had seen two patients in her previous three days of work. It was understood that plaintiff would visit only one patient per day. Some of defendant-employer's home health care nurses were limited to a single patient, and some would see multiple patients.
10. Plaintiff was earning $17.00 per hour to begin upon reaching a patient's residence. Other than mileage reimbursement, plaintiff received no other travel allowances.
11. Pursuant to her employment, plaintiff was required to drop off time slips by 5:00 p.m. on Mondays. January 8, 2001, was a Monday. The distance between the residence of the plaintiff and the residence of the patient she was visiting on January 8, 2001, was in excess of 60 miles round trip. The distance traveled by the plaintiff on January 8, 2001, from her residence to the site of her automobile collision was in excess of 30 miles.
12. With respect to average weekly wage, during the year 2000, the defendant-employers' PRN (as needed) LPNs worked 23.94 hours per week if each week is averaged, or 22.76 hours per week with a weighted average.
 ***********
There was no testimony presented at the hearing before the Deputy Commissioner. The parties stipulated a package of documents into the record that include Industrial Commission Filings, the parties Discovery Responses, Plaintiff's medical records and bills, and the accident report. No medical depositions have been conducted prior to the determination of the following issues that are the only two issues before the Commission:
I. Whether the plaintiff's injury by accident arose out of and in the course of her employment with defendant-employer.
II. What is the plaintiff's average weekly wage and corresponding compensation rate?
 ***********
Based upon the foregoing findings of fact, the Full Commission concludes as follows:
 CONCLUSIONS OF LAW
1. "An employee is entitled to workers' compensation benefits for injuries sustained in an accident arising out of and in the course of employment. `Arising out of ` refers to the cause of the accident; the employee must be about the business of the employer. `In the course of' points `to the time, place, and circumstances under which an accident occurred.' The accident must happen during the time and at the place of employment." Hunt v. Tender Loving Care Home Care Agency, Inc.,569 S.E.2d 675, 678 (N.C.Ct.App. 2002) (quoting Ross v. Young Supply Co.71 N.C. App. 532, 536, 322 S.E.2d 648, 652 (1984).
2. The "traveling salesman" and "contractual duty" exceptions to the "going and coming" rule are exceptions which negate the general rule prohibiting compensation for injuries that occur while an employee travels to and from work. See Hunt, 569 S.E.2d at 678-79. When the "traveling salesman" or "contractual duty" exceptions to the "going and coming" rule apply, such injuries are deemed to have arisen out of and in the course of employment, particularly since plaintiff did not have fixed job hours or a fixed job location. In the Hunt case, the court held:
 "If travel is contemplated as part of the employment, an injury from an accident during travel is compensable'. "Our courts have further held that an accident arises out of the employment when it occurs while the employee is engaged in some activity or duty which he is authorized to undertake, and which is calculated to further, indirectly or directly, the employer's business." Smith v. Central Transport and Liberty Mutual Insurance Co., 51 N.C. App. 316, 320-21, 276 S.E.2d 751, 754 (1981). Employees whose work entails travel away from the employer's premises are held to be within the course of their employment continuously during the trip except when a distinct departure on a personal errand is shown. 51 N.C. App. at 321-22, 276 S.E.2d at 754.
3. The "traveling salesman" exception is applicable and allows for compensation for injuries occurring while traveling to and from work when the employee does not have fixed job hours or a fixed job location. SeeHunt, 569 S.E.2d at 678. In Hunt, the plaintiff was employed as a home health care nurse, and injured in an automobile collision while returning home from a patient's residence. The plaintiff had worked solely with one patient for two years and reported to the patient's home during the same fixed hours each day. The Hunt Court held that the "traveling salesman" exception was not applicable in that case due to the fact that the plaintiff serviced a single patient, and only that patient during the same hours for a two-year period, thereby establishing fixed hours and a fixed place of work. See id. at 678-79.
4. In order for a departure on a personal errand to take travel outside of the course of employment, the departure must be a "distinct" or "total" departure. See Hobgood v. Anchor Motor Freight, 68 N.C. App. 783,785, 316 S.E.2d 86, 87 (1984). In determining whether a departure is a "distinct" or "total" departure on a personal errand, the court looks to the circumstances of the case to determine whether the employee "was at a place where he might reasonably be at such time and doing what he, as an employee, might reasonably be expected to do. . . ." See Smith,51 N.C. App. at 322, 276 S.E.2d at 755. In Smith, the plaintiff was employed by the defendant as a truck driver. After completing a delivery from Wilmington, North Carolina, to Washington, D.C., the plaintiff drove to a truck stop with a lounge and shower facilities, and purchased fuel and other items. The plaintiff was then killed in an automobile collision nearly four hours after making his delivery while leaving the truck stop and driving in the opposite direction of Wilmington. The Smith court held that the plaintiff's actions did not constitute a distinct departure on a personal errand even though the plaintiff was traveling opposite the most direct route to Wilmington because the collision still occurred between the delivery point in Washington D.C. and the employer's business in Wilmington, and that it was not uncommon for truckers to frequent truck stops, wait for further hauling directions, or turn around during trips.See Smith, 51 N.C. App. at 321, 276 S.E.2d at 754.
5. In this case, the "traveling salesman" exception applies because plaintiff was injured while en route to visit a patient pursuant to a job with no fixed hours or place of work. Plaintiff's job required that she report directly from her home to the patient's home for which she would be caring each day rather than beginning her day at her employer's fixed place of business. Plaintiff's job required that she visit with only one patient per day, but during the four days that plaintiff had been employed, she had visited three different patients at three different residences, and worked varying hours each day. Unlike the plaintiff inHunt, under these circumstances, the "traveling salesman" exception would apply to each day upon leaving her house to travel to her patient's home because plaintiff did not have a fixed work place or fixed work hours.
6. Plaintiff's employment was of a nature that failed to establish a fixed work place or fixed work hours, and plaintiff's mere intention to drop her pay slips off while traveling the route to her patient's home that would take her by her employer's place of business on January 8, 2001, did not constitute a "distinct" and "total" departure on a personal errand. Accordingly, the traumatic brain injury and other injuries resulting from plaintiff's automobile accident on January 8, 2001, are compensable as they arose out of and in the course of her employment pursuant to the "traveling salesman" exception to the "going and coming" rule.
7. When an employee's travel qualifies for reimbursement under a company mileage policy at the time of the accident, the travel falls within the "contractual duty" exception providing compensation for such injuries that occur while traveling to or from work. See id. In Hunt, the parties stipulated that the plaintiff did not have to travel over 30 miles roundtrip to visit her patient on the date of her accident. The Hunt
court held that because the employer was not under a contractual duty to pay the plaintiff for her mileage due to her traveling less than 30 miles roundtrip on the date of her accident, the "contractual duty" exception did not apply at the time of her accident. See id. at 679.
8. Plaintiff's injuries sustained while traveling to work on January 8, 2001, are compensable pursuant to the "contractual duty" exception because defendant-employer was under an active contractual duty to reimburse plaintiff for her mileage at the time of her automobile collision. Pursuant to this mileage plan, plaintiff was paid mileage for the amount of miles she was required to travel in excess of 60 miles roundtrip to a single patient's home. Thus, the "contractual duty" exception would apply to a home health care nurse visiting a single patient over the course of a day at the time that nurse traveled beyond a 30-mile radius of her listed home address.
9. Plaintiff's mere intent to drop her pay slip off, as required, while traveling the route to her patient's home that would take her by her employer's place of business does not constitute a "distinct" or "total" departure on a personal errand.
10. "Average weekly wages" shall mean the earnings of the injured employee in the employment in which he was working at the time of the injury during the period of 52 weeks immediately preceding the date of the injury. Where the employment prior to the injury extended over a period of less than 52 weeks, other methods can be used, provided the results are fair and just to both parties. N.C. Gen. Stat. § 97-2(5).
11. In this case, plaintiff's average weekly wage is best determined by employing another method as set forth in N.C. Gen Stat. § 97-2(5) because plaintiff's employment prior to her injury extended over a period of less than 52 weeks. Accordingly, plaintiff's average weekly wage shall be that of a similar situated employee who has been employed by defendant-employer for more than one year. Since the parties stipulated that other LPNs worked an average of 23.94 hours per week, at $17.00 per hour for 23.94 hours per week, plaintiff's average weekly wages are $406.98, which yields a compensation rate of $271.46 per week.
 ***********
Based upon the foregoing findings of fact and conclusions of law, the Full Commission affirms the holding of the Deputy Commissioner and enters the following:
 AWARD
1. Plaintiff suffered an injury by accident during her automobile collision on January 8, 2001. Pursuant to the "traveling salesman" and "contractual duty" exceptions to the "going and coming" rule, plaintiff's injuries are compensable under the North Carolina Workers' Compensation Act, as they arose out of and in the course of her employment.
2. Plaintiff's average weekly wages are $406.98, which yields a compensation rate of $271.46 per week.
3. The parties shall confer and resolve the remaining issues in this case, if any.
4. Defendants shall pay the costs due the Commission.
 S/_______________ CHRISTOPHER SCOTT COMMISSIONER
CONCURRING:
 S/____________ BUCK LATTIMORE CHAIRMAN
 S/_______________ DIANNE C. SELLERS COMMISSIONER