VIRGINIA H. MARTIN, WIDOW AND NEXT FRIEND OF WANDA ANN MARTIN, TERESA JEAN MARTIN, REBECCA SUE MARTIN, ROY EARL MARTIN, JR. AND JOSEPH QUINTON MARTIN, ROY EARL MARTIN, DEC'D., EMPLOYEE v. GEORGIA-PACIFIC CORPORATION, EMPLOYER; SELF-INSURER

No. 69IC99

(Filed 18 June 1969)

1. **Master and Servant § 55— Workmen's Compensation Act — injuries compensable**

   The Workmen's Compensation Act is not intended to provide general health and accident insurance, but its purpose is to provide compensation for those injuries which result from accidents which arise out of and in the course of the employment.

2. **Master and Servant § 96— review of Industrial Commission's findings**

   Where there is sufficient competent evidence to support the Industrial Commission's findings of fact, the Court of Appeals is bound thereby.

3. **Master and Servant § 60— course of employment — travel**

   Ordinarily, employees whose work entails travel away from the employer's premises are within the course of their employment continuously during the trip, except when a distinct departure on a personal errand is shown.

4. **Master and Servant §§ 56, 60— course of employment — procurement of meals**

   Findings that the deceased employee was attending a training program

in another state at the request of his employer, that the employer paid all expenses for the trip including meals and lodging, that at the conclusion of the day's classes the employee returned to his hotel and joined several companions for a walk to a steakhouse for supper, that the employee and his friends deviated three or four blocks from their destination in order to sightsee but that at the time of the accident resulting in the employee's death they had resumed their walk to the restaurant, and that an automobile struck the employee as he was standing on the corner of an intersection, *are held* to support the Industrial Commission's conclusions (1) that a reasonable relationship existed between the employment and the procurement of the meal and (2) that the employee's death arose out of and in the course of employment.

**5. Master and Servant § 56— Workmen's Compensation Act — causal relation between employment and accident**

   An accident arises out of and in the course of the employment when it occurs while the employee is engaged in some activity or duty which he is authorized to undertake and which is calculated to further, directly or indirectly, the employer's business.

**6. Master and Servant § 93— proceedings before the Commission — motion to offer additional evidence**

   Motion to offer additional evidence on appeal before the Full Commission is addressed to the discretion of the Commission, whose ruling thereon is not reviewable in the absence of an abuse of discretion.

APPEAL by defendant employer, self-insurer, from an opinion and award of the North Carolina Industrial Commission entered 11 September 1968.

In this action plaintiffs seek to recover death benefits under the North Carolina Workmen's Compensation Act (G.S. Chap. 97) by reason of the death of Roy Earl Martin, which they contend resulted from injury by accident arising out of and in the course of his employment with defendant employer.

The facts found by the hearing commissioner, based upon stipulations and evidence introduced at the hearing, are as follows:

"1. On the date of accident, September 19, 1967, Roy Earl Martin was an employee of Georgia-Pacific Corporation, American Timber Products Division, Ampac Plant, Conway, North Carolina.

2. The employer, Georgia-Pacific Corporation, is a self-insurer under the North Carolina Workmen's Compensation Act.

3. That on September 19, 1967, both the employer and employee were subject to the provisions of the North Carolina Workmen's Compensation Act.

4. The employee's average weekly wage was $138.46 per week.

5.  Martin went to Oilgear school at the request of his employer for a one week training program (week of September 18, 1967) at the Oilgear Company, 1560 West Pierce Street, Milwaukee, Wisconsin.

6.  All expenses were paid by the employer, including meals and lodging during the week of September 18, 1967; the employer made reservations at the hotel and paid all expenses, including transportation to and from Milwaukee, Wisconson.

7.  Classes at the Oilgear School were conducted from 8:30 A.M. to 4:30 P.M. daily during the period September 18, 1967, through September 21, 1967. The classes for September 22, 1967, were to be conducted from 8:30 A.M. to 11:30 A.M.

8.  On September 19, 1967, Martin was released from his classes at the Oilgear School at 4:30 P.M. He was not required to return to such classes until 8:30 A.M. on the morning of September 20, 1967.

9.  Upon his release from class on September 19, 1967, Martin returned to his place of lodging at the Plankinton House, a hotel located on the southeast corner of the intersection of Plankinton Avenue and East Michigan Street. The Plankinton House is located approximately one and one-third miles (7200 feet) northeast of the Oilgear School.

10.  The employer gave Martin no instructions with respect to the use of his time while he was not attending classes at the Oilgear School.

11.  The instructor at the Oilgear School informed Roy Earl Martin and other students in the class that there would be no homework, that no tests would be given in the course, and that the students through their own initiative were to learn and do what they wanted to do insofar as working on pumps.

12.  At approximately 6:45 P.M. on September 19, 1967, Martin, Stewart Lane, and two other students attending the Oilgear School left the Plankinton House.

13.  Upon leaving the Plankinton House, Martin and the others walked east three or four blocks and observed some yachts which were moored on the Milwaukee River. After walking several blocks they decided to go to the steakhouse at which they had previously planned to eat dinner. The steakhouse was located on Wisconsin Avenue, six to eight blocks west of the Plankinton House.

14.  At approximately 8:30 P.M., while en route to the steak-house, Martin and the others were standing on the sidewalk at the intersection of Plankinton and Wisconsin Avenues, waiting to cross the street, when an automobile driven by one Harold M. Brumfield traveling north on Plankinton Avenue struck a safety island and veered across the intersection and hit three men, including Martin, standing on the corner.

15.  Martin was admitted to Milwaukee County General Hospital for treatment of injuries arising out of the accident; he was a patient in said hospital from September 19, 1967, until his death on September 26, 1967, having never regained consciousness.

16.  Martin's death resulted from injuries by accident as hereinabove described.       .

17.  Martin's medical bill for hospitalization from September 19 to September 26, 1967, was $875.70.

18.  Martin's medical bill for professional services rendered by doctors attending him at Milwaukee County General Hospital was $900.00.

19.  Martin's complete funeral bill was $1535.85.

20.  That Roy Earl Martin sustained an injury by accident arising out of and in the course of his employment on September 19, 1967; that the restaurant at the hotel where he was staying was not open for the evening meal and at the time of said accident Roy Earl Martin was on his way to a restaurant to eat his evening meal which the defendant employer was to pay for as a part of the expenses of his trip to Milwaukee to attend school at the direction of the employer.

21.  That the deceased employee left surviving at the time of his death his widow, Virginia H. Martin, whom he married on January 30, 1954; that he also left surviving five minor children, to wit: Wanda Ann, born March 4, 1955; Teresa Jean, born July 30, 1956; Rebecca Sue, born December 17, 1958; Roy Earl, Jr., born April 28, 1960; and Joseph Quinton, born February 17, 1963."

The hearing commissioner concluded as a matter of law that Martin sustained an injury by accident arising out of and in the course of his employment with defendant and awarded plaintiffs "compensation at the rate of $42.00 per week for a period of 350 weeks (not to exceed $15,000.00, including funeral expense)" plus all medical expenses resulting from the accident.

. Pending review of the decision and award of the hearing commissioner by the Full Commission, the defendant made a motion supported by affidavits to the Full Commission to receive further evidence. Upon review, the Full Commission denied the motion and adopted as its own the findings of fact, conclusions and award of the hearing commissioner. From this opinion and award the defendant appealed.

*Allsbrook, Benton, Knott, Allsbrook & Cranford by Dwight R. Cranford and Johnson, Johnson & Johnson by Bruce C. Johnson for plaintiff appellees.*

*Poyner, Geraghty, Hartsfield & Townsend by John Q. Beard for defendant appellant.*

MALLARD, C.J.

**[1, 2]** It is well established in this State that the Workmen's Compensation Act is not intended to provide general health and accident insurance, but its purpose is to provide compensation for those injuries which result from *accidents* which *arise out of* and *in the course of* the employment. *Bryan v. Church,* 267 N.C. 111, 147 S.E. 2d 633 (1966); *Lewis v. Tobacco Co.,* 260 N.C. 410, 132 S.E. 2d 877 (1963); *Anderson v. Motor Co.,* 233 N.C. 372, 64 S.E. 2d 265 (1951); *Withers v. Black,* 230 N.C. 428, 53 S.E. 2d 668 (1949). From an examination of the evidence presented, we think there was sufficient competent evidence to support the Industrial Commission's findings of fact, and we are bound by them. *Hinkle v. Lexington,* 239 N.C. 105, 79 S.E. 2d 220 (1953); G.S. 97-86; *Williams v. Board of Education,* 1 N.C. App. 89, 160 S.E. 2d 102 (1968). See also *Askew v. Tire Co.,* 264 N.C. 168, 141 S.E. 2d 280 (1965).

Martin's death was by accident. The main question presented for decision by defendant's assignments of error is whether the evidence was sufficient to support the finding and conclusion that the injury by accident arose out of and in the course of employment. G.S. 97-2(6).

**[3]** In 1 Larson, Workmen's Compensation Law, § 25.00, p. 443, it is said, "Employees whose work entails travel away from the employer's premises are held in the majority of jurisdictions to be within the course of their employment continuously during the trip, except when a distinct departure on a personal errand is shown. Thus, injuries arising out of the necessity of sleeping in hotels or eating in restaurants away from home are usually held compensable." Also in 1 Larson, Workmen's Compensation Law, § 25.21, p. 445, it is stated

that "traveling employees, whether or not on call, usually do receive protection when the injury has its origin in a risk created by the necessity of sleeping and eating away from home. The hotel fire cases are the best illustration of this. Closely related are the injuries sustained in the process of getting meals. So when a traveling man slips in the street or is struck by an automobile between his hotel and a restaurant, the injury has been held compensable, even though the accident occurred on a Sunday evening, *or involved an extended trip occasioned by employee's wish to eat at a particular restaurant.*" (Emphasis added.) See *Kiger v. Service Co.*, 260 N.C. 760, 133 S.E. 2d 702 (1963), and *Brewer v. Trucking Co.*, 256 N.C. 175, 123 S.E. 2d 608 (1962). This seems to be the majority rule based upon an analysis of cases from various parts of the United States. Illustrative of such cases are: *Thornton v. Hartford Acc. & Indem. Co.*, 198 Ga. 786, 32 S.E. 2d 816 (1945); *Zurich Insurance Company v. Zerfass,* 106 Ga. App. 714, 128 S.E. 2d 75 (1962); *Alexander Film Co. v. Industrial Commission,* 136 Colo. 486, 319 P. 2d 1074 (1957), *Kohl v. International Harvester Company,* 9 A.D. 2d 597, 189 N.Y.S. 2d 361 (1959).

In the *Kohl* case the employee was sent to Ohio to assist in putting on a demonstration of his employer's products at a so-called field day, and after working until a late hour, left his motel and undertook a journey of approximately ten miles to obtain his evening meal and some incidental relaxation at a particular restaurant. While en route to such restaurant he was involved in a fatal automobile accident. The Supreme Court of New York held that the employee died in an accident which arose out of and in the course of his employment and affirmed an award entered by the Workmen's Compensation Board. Accord, *Alexander Film Company v. Industrial Commission,* 136 Colo. 486, 319 P. 2d 1074 (1957); *Walker v. Speeder Mach. Corp.,* 213 Iowa 1134, 240 N.W. 725 (1932); *Robinson v. Federal Telephone & Radio Corp.,* 44 N.J. Super. 294, 130 A. 2d 386 (1957).

In the case of *Thornton v. Hartford Acc. & Indemn. Co., supra,* it is said:

"A traveling salesman is taken away from his home or headquarters by his employment; and, because of the nature of his work, he usually can not return home each night. He must of necessity eat and sleep in various places in order to further the business of his employer; and the employer recognizes these necessities and usually pays the expenses of his lodging and meals, as was done in this case.

While lodging in a hotel or preparing to eat, or while going to or returning from a meal, he is performing an act incident to his employment, unless he steps aside from his employment for personal reasons. Such an employee is in continuous employment, day and night. This does not mean that he can not step aside from his employment for personal reasons, or reasons in no way connected with his employment, just as might an ordinary employee working on a schedule of hours at a fixed location. He might rob a bank; he might attend a dance; or he might engage in other activities equally conceivable for his own pleasure and gratification, and ordinarily none of these acts would be beneficial or incidental to his employment and would constitute a stepping aside from the employment."

[4]   The facts stipulated and found by the Industrial Commission disclose that the deceased employee, Roy Earl Martin, was in Milwaukee at the request of his employer to attend a one-week training program. All expenses for the trip, including meals and lodging, were paid by the employer. Martin was sent to a school conducting the training program for the benefit of the employer's business, and at the time of the accident he was on his way to a restaurant to eat his evening meal. The evidence does not reveal that he was required to eat his meals at the hotel, but under the circumstances he could eat his meals at a place of his choice in Milwaukee. That this was a necessary incident of the employment is recognized by the employer when it agreed to pay for his meals. In the absence of some requirement of the employer specifying where he should eat, we think it is immaterial under the evidence and facts of this case whether he could have eaten at the hotel where he was staying. Even if we assume that he deviated from the course of employment to walk three or four blocks from his hotel to see yachts moored on the Milwaukee River and that this was purely a personal mission, the facts supported by competent evidence clearly show that at the time of the accident he had abandoned this personal sight-seeing mission and was on his way to eat the evening meal. In order to attend the training program Martin had to travel from North Carolina to Milwaukee. He had to eat and he had to sleep. These were necessities incidental to the trip. It is clear that he could not accomplish that which was assigned to him by the employer without traveling to Milwaukee, and eating and sleeping while there. We think there was a reasonable relationship between Martin's employment and the eating of meals. The eating of meals was reasonably necessary to be done in order that he might perform the act he was employed to do, to wit, attendance at the training program in Milwaukee. We are of the

opinion and so hold that while Martin was on his way to eat the evening meal, under the circumstances of this case, that he was at a place where he might reasonably be at such time and doing what he, as an employee, might reasonably be expected to do, and that in so doing he was acting in the course of and scope of his employment.

[5]   "An accident arises out of and in the course of the employment when it occurs while the employee is engaged in some activity or duty which he is authorized to undertake and which is calculated to further, directly or indirectly, the employer's business." *Perry v. Bakeries Co.*, 262 N.C. 272, 136 S.E. 2d 643 (1964). See also *Rice v. Boy Scouts*, 263 N.C. 204, 139 S.E. 2d 223 (1964).

Defendant appellant relies strongly on two North Carolina cases to support its contention that Martin's death was not by accident arising out of and in the course of his employment. In *Sandy v. Stackhouse, Inc.*, 258 N.C. 194, 128 S.E. 2d 218 (1962), the employee went out on a mission of his own to purchase a soft drink and some beer after he had completed his day's work. While returning to the motel he was struck by an automobile and died as a result of the injuries received. Compensation was denied by the Commission. The denial was affirmed on appeal. In *Perry v. Bakeries Co., supra*, the employee was away from his home attending a sales meeting of the employer, at the expense of the employer. Employee arrived the day before the sales meeting was scheduled to begin and attended a social hour given by the employer at 5:30 P.M. Afterwards he had dinner and then went out on a mission of his own to the swimming pool, where he was injured. The Commission awarded compensation but the Supreme Court reversed. Each case is easily distinguishable from the instant case in that the employee was injured while engaging in an entirely personal function wholly independent of the employment. The purchase of drinks and swimming were not necessary incidents of the employment and there was no reasonable relationship between the employment and the soft drink, the beer, or the swimming. Other cases cited by defendant and not referred to herein are distinguishable.

[6]   After the Hearing Commissioner had filed his opinion and award based thereon and before the matter was heard by the Full Commission on appeal, the defendant filed a written motion requesting that the Commission issue an order authorizing the receiving of additional evidence. The ground upon which the defendant bases its motion is that the witness Lane was mistaken when he testified that the hotel restaurant was closed on the date of the accident. At the

hearing the Full Commission entered the following order relating to the motion:

> "After considering all matters involved in this case the Full Commission is of the opinion that there has been no showing that the motion to receive further evidence in this case would produce any substantially material evidence which would in any manner change the results which have been reached in this case, and it is the opinion of the Full Commission that the defendant's motion to receive further evidence should be, and it is hereby, denied."

In the case of *Green v. Construction Co.*, 1 N.C. App. 300, 161 S.E. 2d 200 (1968), it is said:

> "Motions to take additional evidence on appeal before the Full Commission are governed by the general law of this State for the granting of new trials on the grounds of newly discovered evidence. (See Rule XX, § 6 of Rules of the Industrial Commission.) Under our practice, a motion for new trial on the ground of new evidence is addressed to the discretion of the trial judge, and his decision, whether granting or refusing the motion, is not reviewable in the absence of an abuse of discretion."

In the case before us we are of the opinion and so hold that no abuse of discretion has been shown. This assignment of error is without merit.

In this case we think the fatal accident is fairly traceable to the employment and that a reasonable relationship to the employment exists.

We are of the opinion and so hold that the competent evidence was sufficient to support the finding and the conclusion that the fatal accident arose out of and in the course of employment.

The opinion and award of the Industrial Commission is affirmed.

Affirmed.

BRITT and PARKER, JJ., concur.