The undersigned have reviewed the award based upon the record of the proceedings before the Deputy Commissioner and the briefs and oral arguments before the Full Commission. The appealing party has shown good grounds to reconsider the evidence. However, upon reconsideration of the evidence, the undersigned reach the same facts and conclusions as those reached by the Deputy Commissioner with some minor modifications. The Full Commission, in their discretion, have determined that there are no good grounds in this case to receive further evidence or to rehear the parties or their representatives, as sufficient convincing evidence exists in the record to support their findings of fact, conclusions of law, and ultimate order.
Accordingly, the Full Commission finds as fact and concludes as matters of law the following, which were entered by the parties at the hearing as:
 STIPULATIONS
1. The parties are subject to and bound by the provisions of the North Carolina Workers Compensation Act.
2. An employment relationship existed between plaintiff-employee and defendant-employer at all relevant times herein.
3. Travelers Insurance Company was the carrier on the risk at all relevant times herein.
4. Plaintiffs average weekly wage was $840.00, yielding a maximum allowable compensation rate of $512.00.
5. The date of plaintiffs injury by accident was March 5, 1997.
6. Plaintiff continues under the active treatment of Dr. Ronald W. Singer, an orthopedic surgeon, who has recommended surgery and removal of the hardware at the fracture site.
7. At the time of the hearing before the Deputy Commissioner, plaintiff was not at maximum medical improvement and it was not anticipated that he will reach maximum medical improvement in the reasonably near future.
8. The parties stipulated to plaintiffs medical records from Randolph County Hospital, East Alabama Medical Center, Miller Orthopedic Clinic, Mercy Hospital South, and from Dr. Ronald W. Singer.
9. The issues presented are:
 a) Whether plaintiff sustained an injury by accident arising out of the course of his employment with the defendant-employer on March 5, 1997?
 b) Whether plaintiff is entitled to benefits under the North Carolina Workers Compensation Act?
 ***********
The Full Commission adopts the findings of fact found by the Deputy Commissioner with minor modifications as follows:
 FINDINGS OF FACT
1. At the time of the hearing before the Deputy Commissioner, plaintiff was a 40 year old high school graduate who has always worked in construction. At the time of the hearing, defendant-employer had terminated plaintiff because defendant-employer believed plaintiff was unable to perform his job duties.
2. Plaintiff began working for defendant-employer on or about June 7, 1996 as a heavy equipment operator.
3. In early 1997, defendant-employer transferred plaintiff to a job site in Roanoke, Alabama. Roanoke is in Randolph County, Alabama. While in Roanoke, Alabama, plaintiff and 15 to 20 other co-employees lived at a Best Western Motel and were paid a per diem of $15.00 per day. Defendant-employer also paid plaintiff $600.00 for the use of his truck.
4. Joe Vasquez was the superintendent over the job. Plaintiff was the supervisor for grading. All other employees were supervised by Joe Vasquez.
5. Roanoke, Alabama, has several fast food restaurants, but Randolph County does not allow the sale of beer or alcoholic beverages. Chambers County, which is less than one mile from Roanoke, allows the sale of beer and alcoholic beverages. Chambers County also has several establishments that serve meals and alcoholic beverages. Defendant-employers employees occasionally patronized these establishments.
6. On March 5, 1997, plaintiff rode with another employee, Scott Brotherton, and superintendent Joe Vasquez to an establishment in Chambers County known as ETs, which is a bar located in a portion of a building that adjoins a convenience store. Joe Vasquez, Scott Brotherton and plaintiff arrived at ETs after 5:00 p.m. They were joined later by four or five other employees from the job site who arrived in defendant-employers Suburban. At ETs everyone drank beer and participated in an electric race car game seeking to win tickets to the Talladaga racetrack. At the hearing before the Deputy Commissioner, plaintiff testified that he went to ETs for the purpose of eating chili that was provided free by the bar. When the chili ran out, plaintiff went next door to the convenience store and purchased some crackers and a soft drink.
7. Except for Scott Brotherton and plaintiff, all the other employees of the defendant-employers were Hispanic, which resulted in racial tension inside the bar. At the hearing before the Deputy Commissioner, Joe Vasquez testified that he was told by one of the local patrons at the bar "that if he [Vasquez] were any darker, they would have him hanging from a tree. Joe Vasquez, in spite of these comments and other derogatory remarks made to other Hispanic crew members, remained at the bar another thirty to thirty-five minutes. Tensions rose and one of the Hispanic workers was cut by one of the bars local patrons. At that time, there were approximately thirty people in the bar, of which only six or seven were employees of the defendant-employer. The local patrons also began to produce weapons, including clubs and firearms. With that, the employees of the defendant-employer who were in the bar ran into the parking lot and shots were fired. Plaintiff testified at the hearing before the Deputy Commissioner that at the time of the shooting, he was returning from the convenience store with a Pepsi and crackers in his hand, intending to ask another employee to drive him back to the job site so he could get his truck and return to the motel. However, at that same time, Joe Vasquez and Scott Brotherton heard plaintiff cry out "I've been hit. Plaintiff received a severe injury to the left leg from a bullet wound that shattered his leg, causing him to fall in the parking lot.
8. Plaintiffs coworkers placed plaintiff in the back of Joe Vasquezs truck and took plaintiff back to the motel where an ambulance was called. After about fifteen minutes, the ambulance arrived and plaintiff was transported to a medical facility which was unable to treat his complicated leg wound. Subsequently, plaintiff was taken to the East Alabama Medical Center where he was diagnosed with a comminuted fracture of the distal shafts of the tibia and fibula. After undergoing surgery in Alabama, plaintiff was subsequently brought back to his residence in South Carolina and has undergone additional surgery by Dr. Ronald Singer, an orthopedist. Dr. Singer advised plaintiff not to return to work because of the risk of losing his leg. Moreover, as this is a denied claim, Dr. Singer had not provided full medical treatment nor had plaintiff been released from medical care as of the date of the hearing before the Deputy Commissioner.
9. Nevertheless, in order to support his eight year old daughter, whom plaintiff is raising alone, plaintiff returned to work as a site supervisor for Wades Trucking. Plaintiff worked from September to November, 1997, and was laid off when there was no more work available. Plaintiff began working again with Wades Trucking on or about January of 1998 and at the time of the hearing before the Deputy Commissioner was still currently employed with Wades Trucking where he earns $12.00 per hour and works 45 to 50 hours per week.
10. Officer Charles M. Williams, the Chief Deputy in the Sheriffs Department in Chambers County, who has been employed by the Sheriffs Department since February of 1979, testified that he is very familiar with both the business located at ETs and the one adjoining it. The one adjoining ETs is the Bypass Shopette, which takes up approximately three-fourths of the building occupied by ETs and the Bypass Shopette. Officer Williams testified that the Bypass Shopette is typical of a rural convenience store in that it sells bread, chips, soft drinks, beer, canned food products, candy and other grocery products. Officer Williams confirmed that on March 5, 1997, plaintiff could have purchased a soft drink and crackers or other food products or groceries from the Bypass Shopette.
11. Plaintiffs employment with defendant-employer required plaintiff to stay out of town and made it necessary for plaintiff to participate in the known and accepted practice of staying overnight in motels and eating at restaurants or similar establishments. Consequently, the circumstances surrounding the assault on plaintiff arose out of and in the course of plaintiffs employment with defendant-employer.
12. On March 5, 1997, plaintiff sustained an injury by accident arising out of and in the course of his employment with defendant-employer.
13. At the time of the hearing before the Deputy Commissioner, plaintiff was not at maximum medical improvement and the parties agreed that it was not anticipated that he will reach maximum medical improvement in the reasonably near future. Plaintiffs physician, Dr. Singer, has recommended removal of the hardware and rods in plaintiffs fracture site, but this surgery cannot be performed until the workers compensation issues are resolved
 ***********
Based upon the findings of fact, the Full Commission concludes as follows:
 CONCLUSIONS OF LAW
1. The law in this state provides that employees whose work requires travel away from the employers premises are within the course of their employment continuously during such travel, except when there is a distinct departure for a personal errand. Martinv. Georgia-Pacific Corp., 5 N.C. App. 37, 167 S.E.2d 790 (1969). An employee on a business trip for his employer is performing an act incident to his employment while lodging in a hotel, preparing to eat, or while going to or returning from a meal. Cauble v.Soft-Play, Inc., 124 N.C. App. 526, 477 S.E.2d 678 (1996); Martinv. Georgia-Pacific Corp., supra.
2. In this case, although going to the bar and consuming beer there may have constituted a personal endeavor, at the time of his injury plaintiff had abandoned this personal errand and was back within the scope of his employment. When he was shot in the parking lot, plaintiff had left the bar, obtained some food and a soft drink, and was proceeding to leave the premises and to return to his lodging after retrieving his truck. As a traveling employee, plaintiff was within the course and scope of his employment continuously while on the trip and his accidental injury was a natural and probable result of risks associated with his job. As such, on March 5, 1997, plaintiff sustained an injury by accident arising out of and in the course of his employment with defendant-employer. N.C. GEN. STAT. 97-2(6); Cauble v.Soft-Play, Inc., supra; Martin v. Georgia-Pacific Corp., supra.
3. Plaintiff is entitled to temporary total disability benefits in the amount of $512.00 per week beginning March 5, 1997 and continuing until further Order of the Industrial Commission. However, defendants shall be given a credit for any payments made to plaintiff made by wage continuation or otherwise. Defendants shall also be given a credit for any income earned by plaintiff during this time. N.C. GEN. STAT. 97-29.
4. Plaintiff is entitled to the payment of the medical expenses incurred, or to be incurred, for the treatment of plaintiffs injuries sustained as a result of his injury by accident of March 5, 1997, including any and all treatment and surgery by Dr. Singer and any further treatment that tends to cure, give relief and/or lessen the plaintiffs period of disability. N.C. GEN. STAT. 97-25;97-2(19).
 ***********
Based upon the foregoing findings of fact and conclusions of law, the Full Commission affirms the holding of the Deputy Commissioner and enters the following:
 AWARD
1. Defendants shall pay plaintiff temporary total disability benefits in the amount of $512.00 per week beginning March 5, 1997 and continuing until further Order of the Industrial Commission. However, defendants shall be given a credit for any payments made to plaintiff made by wage continuation or otherwise. Defendants shall also be given a credit for any income earned by plaintiff during this time. Plaintiff shall provide defendants with wage statements from any and all employers from whom he has received wages since March 5, 1997 to the present. Compensation due which has accrued shall be paid to plaintiff in a lump sum, subject to attorneys fees approved below.
2. Plaintiff is entitled to the payment of the medical expenses incurred, or to be incurred, for the treatment of plaintiffs injuries sustained as a result of his injury by accident of March 5, 1997, including any and all treatment and surgery by Dr. Singer and any further treatment that tends to cure, give relief and/or lessen plaintiffs period of disability.
3. A reasonable attorneys fee of twenty-five percent of the compensation awarded to plaintiff in paragraph 1 above is hereby approved and shall be paid by deducting twenty-five percent from any accrued benefits and paying the same directly to plaintiffs counsel. Thereafter, defendants shall pay directly to plaintiffs counsel every fourth check.
4. Defendants shall pay the costs.
This ___ day of March, 2000.
 S/______________________ LAURA KRANIFELD MAVRETIC COMMISSIONER
CONCURRING:
S/___________________ BERNADINE S. BALLANCE COMMISSIONER
S/______________ RENE C. RIGGSBEE COMMISSIONER