***********
This matter was reviewed by the Full Commission based upon the record of the proceedings before Deputy Commissioner Morgan S. Chapman, and the briefs and oral arguments on appeal. The appealing party has shown good ground to reconsider the evidence. Having reconsidered the evidence of record, the Full Commission reverses the prior Opinion and Award, and enters the following Opinion and Award.
 ***********
The Full Commission finds as facts and concludes as matters of law the following, which were entered into by the parties in a Pre-Trial Agreement, and at the hearing before the Deputy Commissioner on 6 March 2000 as:
 STIPULATIONS
1. Defendant-employer regularly employees three or more employees and is bound by the North Carolina Workers' Compensation Act. The employer-employee relationship existed between the employer and employee on November 17, 1998, the day of decedent's death.
2. The carrier on the risk is CNA Insurance Company.
3. Decedent's average weekly wage would be sufficient to generate the maximum compensation rate.
The Pre-Trial Agreement dated March 1, 2000 was submitted by the parties and is incorporated by reference.
 ***********
Based upon the evidence of record, the Full Commission finds as follows:
 FINDINGS OF FACT
1. On November 17, 1998, decedent was fifty-three years old and was employed as a project supervisor for defendant electrical construction company. He had recently completed his assigned project and did not have a new job that was ready to start. Consequently, he was sent to Clayton to work on an existing project. Edward Hinton was the project supervisor for the Bayer project in Clayton. There were two buildings at the Bayer plant in which wiring had to be installed. Mr. Hinton assigned the smaller building to decedent.
2. At the time in question, the decedent lived in Manteo with his wife, Sylvia Cook. He left home early Monday morning, November 16, 1998, to drive to Clayton and reported for work that morning. The employees working on this project worked four ten-hour days per week, working from 7:00 a.m. to 5:30 p.m. After lunch that day, decedent told Mr. Hinton that he had experienced a sharp pain in his chest but that the pain had gone away. When Mr. Hinton suggested that he might want to see a doctor, he indicated that he would do so if the pain came back. The deceased told Mr. Hinton that the deceased had a similar sensation a few years earlier and that episode was diagnosed as acid reflux.
3. Decedent worked the remainder of that day. As he rode in the defendant-employer's van at the conclusion of the workday the deceased was laughing and joking as he did normally. He called his wife from the hotel that night as usual. Although he told her that he was tired, he did not tell her about the episode of chest pain. On Tuesday November 17, 1998, he reported for work and performed his job duties. That afternoon he advised Mr. Hinton that he had had some problems with chest pain that morning, that it was not as bad as the previous day and that the last time he had had similar problems, which was several years before, it turned out to be acid reflux. He also indicated that he might see a doctor the next morning.
4. Mrs. Cook spoke with decedent on Tuesday morning when decedent called her and asked her to look for a per diem check from his employer when she went to get their mail. He also called her that afternoon and told her that he would call her again that night. In none of his communications with his wife that day did he tell her about having chest pain.
5. Decedent left work at 5:30 that afternoon and went to the motel where he was staying. The employees of defendant-employer took a van from a centralized parking location to the work site each morning, and returned the same way each afternoon. Decedent did not call his wife that night, so she began to call his room beginning at approximately 10:30 p.m., but she got no answer. At about 7:00 the next morning, she called Mr. Hinton at the job site and asked him to go to the motel and check on her husband. Mr. Hinton drove to Selma and asked a clerk at the motel to open decedent's room. When they went into the room, they found decedent lying face down on the floor outside of the bathroom fully clothed except for his boots. He was dead. The clerk called the police who subsequently arrived and who called Dr. Taylor, the Johnston County Medical Examiner. Because there was no evidence of trauma or violence, Dr. Taylor gave authorization for the body to be taken to the morgue at the local hospital.
6. Dr. Taylor examined the decedent's body at approximately 10:00 that morning. In view of the history and the physical findings, he did not recommend or perform an autopsy. Dr. Taylor diagnosed "Ischemic Heart Disease" as the decedent's cause of death.
7. Mrs. Cook was notified of her husband's death that morning. She apparently did not request an independent autopsy although she was surprised at the diagnosis. She was unaware that decedent had had any heart-related complaints.
8. Dr. Taylor never treated or even saw the decedent while the decedent was alive. Dr. Taylor did not have access to the decedent's medical records and performed only a cursory examination.
9. Dr. Taylor's conclusions are without sufficient basis to establish a known cause of death and therefore are given no weight.
10. At the time of the decedent's death, plaintiff Sylvia Cook was wholly dependent upon decedent.
11. At the time of the decedent's death, decedent had two children by a previous marriage that were minors. Emily L. Cook (date of birth 12 October 1981) and Ryan D. Cook (date of birth 14 February 1983) were minor children and wholly dependent upon decedent on November 17, 1998, the date of decedent's death.
12. Both Emily L. Cook and Ryan D. Cook are now over 18 years of age.
13. Decedent had a third child from the previous marriage, Ross D. Cook. Ross D. Cook was over 18 at the time of decedent's death and was not dependent on decedent.
 ***********
Based on the foregoing findings of facts, the Full Commission concludes as follows:
 CONCLUSIONS OF LAW
1. A traveling employee is within the course of his employment continuously throughout the travel unless there is a distinct departure on a personal errand. G.S. § 97-2(6); Cauble v. Soft-Play, Inc.,124 N.C. App. 526, 477 S.E.2d 678 (1996); Martin v. Georgia PacificCorp., 5 N.C. App. 37, 167 S.E.2d 790 (1969).
2. There is a rebuttable presumption that a death occurring within the course of employment is work-related when the medical reason for death is unknown. Pickrell v. Motor Convoy, Inc., 322 N.C. 363, 370 S.E.2d 582
(1988).
3. Given that no autopsy was performed and that Dr. Taylor was unaware of the decedent's medical history, Dr. Taylor's conclusions based on his cursory post mortem evaluation are without sufficient basis to overcome the Pickrell presumption in this case.
4. Mr. Cook's death on 17 November 1998 occurred during the course of employment for a medically unknown reason. Therefore, plaintiffs Sylvia U. Cook, Emily L. Cook, and Ryan D. Cook, as the only whole dependents on the date of death, are entitled to weekly benefits. G.S. §§97-2(12), 97-38, 97-39.
5. Ross D. Cook was over the age of 18 at the time of decedent's death and therefore is not entitled to any benefits. G.S. §§ 97-2(12), 97-38,97-39.
6. Decedent's estate is entitled to be paid burial expenses in the amount of $2,000.00. G.S. § 97-38.
7. Decedent's estate is entitled to reimbursement for the cost of any medical treatment that may have resulted from the death. G.S. § 97-25.
 ***********
Based upon the foregoing findings of facts and conclusions of law, the Full Commission reverses the holding of the Deputy Commissioner and enters the following:
 AWARD
1. The defendants shall pay plaintiff Sylvia Cook and the two minor children Emily Cook and Ryan Cook death benefits in the total amount of $532.00 per week, to be divided evenly three ways.
2. Plaintiff Sylvia Cook's benefits shall be paid at the rate of $177.33 per week for a period of 400 weeks from the date of death. That compensation which has accrued shall be paid in a lump sum, subject to the attorney's fee hereinafter approved.
3. Plaintiff Emily Cook shall be paid at the rate of $177.33 per week from the date of death for 400 weeks. That compensation which has accrued shall be paid in a lump sum, subject to the attorney's fee hereinafter approved.
4. Plaintiff Ryan Cook shall be paid at the rate of $177.33 per week from the date of death for 400 weeks. That compensation which has accrued shall be paid in a lump sum, subject to the attorney's fee hereinafter approved.
5. The defendants shall pay for any medical treatment that may have resulted from the death.
6. The defendants shall pay decedent's funeral expenses in the amount of $2,000.00.
7. An attorney fee of 25% of the compensation awarded herein is hereby approved for plaintiffs' counsel. The defendants shall forward 25% of the accrued compensation directly to plaintiffs' counsel and, thereafter, every fourth check.
8. The defendants shall pay the costs of this appeal.
 S/_______________ CHRISTOPHER SCOTT COMMISSIONER
CONCURRING:
 S/______________________ LAURA KRANIFELD MAVRETIC COMMISSIONER
 S/_______________ RENEE C. RIGGSBEE COMMISSIONER