DANA L. DESETH, DECEASED, Employee/Plaintiff v. LENSCRAFTERS, INC., Employer, AND LIBERTY MUTUAL INSURANCE COMPANY, Carrier/Defendants

No. COA02-1306

(Filed 2 September 2003)

**1. Workers' Compensation— store manager struck by car in mall parking lot—no control over lot by store**

LensCrafters did not maintain control over a mall parking lot, so that an employee killed in the lot while going to work would be entitled to workers' compensation, where the mall required tenants to pay a common area charge and to enforce the policy that employees park in remote areas. Tenants shared the costs, but the mall hired, paid, and directed the maintenance staff, and the enforcement of a parking scheme developed by the landlord by a tenant with only a non-exclusive right to use the parking lot did not give the employer control of the lot.

DESETH v. LENSCRAFTERS, INC.

[160 N.C. App. 180 (2003)]

2. **Workers' Compensation— store manager struck by car in parking lot—not traveling—no special errand—not preliminary preparations**

 The death of a LensCrafter store manager was not compensable under the Workers' Compensation Act where decedent died after being struck by a car as he walked across a mall parking lot to open the store. This case is distinguishable from cases involving traveling employees or situations in which the employee was running a special errand for the employer, and the "preliminary preparations" cases involve employees performing necessary maintenance on a vehicle.

3. **Workers' Compensation— struck by car while going to work—risk of injury not increased by employment**

 The Industrial Commission did not err by not considering as an alternate basis of compensation whether decedent's employment increased his risk of injury where he died after being struck by a car while crossing a parking lot to open a store. Traffic hazards are not generally traceable to employment and the Commission specifically found that the decedent was not exposed to greater danger than the general public.

 Appeal by plaintiff from opinion and award entered 7 May 2002 by the North Carolina Industrial Commission. Heard in the Court of Appeals 11 June 2003.

 *Womble Carlyle Sandridge & Rice, PLLC, by Clayton M. Custer, for plaintiff-appellant.*

 *Nelson Mullins Riley & Scarborough, L.L.P., by Paul J. Osowski and John E. Schmidt, III, for defendants-appellees.*

 LEVINSON, Judge.

 Plaintiff appeals from a unanimous opinion of the North Carolina Industrial Commission denying compensation. We affirm.

 Dana Lee Deseth (the decedent) was employed as a retail manager for the LensCrafters store located at Hanes Mall in Winston-Salem, North Carolina. On 14 September 1997, after driving to Hanes Mall to open the LensCrafters store, decedent parked his vehicle at a considerable distance from the entrance and began walking towards the mall. While traversing the mall parking lot, decedent was struck

by a vehicle driven by another LensCrafters employee, Rod Pandolfo. Decedent died two days later from resulting injuries.

The findings of fact of the Industrial Commission (Commission) recite the relevant details of the incident leading to decedent's injury and death. The Commission found, in pertinent part, the following:

2. Employee-decedent parked his automobile in the mall parking lot farthest away from the store, as it was his custom to do, and was walking across the empty parking lot towards the LensCrafters store. The LensCrafters store at Hanes Mall has an outside entrance that is accessible to the public. Employee-decedent was carrying the store keys along with other work related material in his hand as he was walking across the parking lot.

3. Employee-decedent had reached the edge of the parking lot and was about to cross the inner loop road into the curtilage of the property in front of the LensCrafters' outside entrance as Rod Pandolfo was driving his automobile along the inner loop of the mall, heading towards the parking lot to park his car. Mr. Pandolfo was running late for work and had been cutting across the empty parking lot to arrive at the parking lot in front of LensCrafters. Mr. Pandolfo was driving his automobile at approximately 30 miles per hour. There was testimony that Mr. Pandolfo intentionally directed his automobile at employee-decedent as if to play the game of chicken with employee-decedent. There was some evidence that employee-decedent had participated in the game of chicken with Mr. Pandolfo and other employees. But on this occasion there was an independent witness who saw the incident and indicated that from her stand point [sic] employee-decedent . . . attempted to get out of the way but could not and the automobile struck him causing him to fly up into the air and coming to rest in front of the automobile.

. . . .

5. Employee-decedent was struck while he stood in the parking lot at the edge of the marked parking stalls in front of the LensCrafters store and Loading Dock C of Hanes Mall. The time of the accident was 12:02 p.m.

6. . . . Under the terms of the lease between LensCrafters and Hanes Mall, LensCrafters received a non-exclusive right to use, along with approximately 200 other Mall tenants, all of the com-

mon areas including the parking lot in question. This non-exclusive right was subject to LensCrafters['] acknowledgment and agreement that, "Landlord shall, at all times, have full control, management and direction of the Common Areas. . . ."

7. The mere right of LensCrafters to use the parking lot under the terms of the lease with the mall does not constitute "sufficient control" over the parking lot to allow a finding that the parking lot was within LensCrafters' premises. LensCrafters had no more control over the area of the parking lot where the accident occurred than any other tenant in the mall. LensCrafters did not control nor [sic] maintain the parking lot referenced above and employee-decedent was not exposed to any danger greater than the public in general.

8. Employee-decedent's injuries did not occur on the employer's premises. Employee-decedent's injuries occurred on property that was controlled exclusively by the landlord . . . who owns Hanes Mall.

The Commission reached the following conclusions of law:

1. Employee-decedent did not sustain an injury by accident while in the course and scope of his employment with defendant. N.C. Gen. Stat. § 97-2(6).

2. Employee-decedent's injuries did not occur on the employer's premises. Therefore, employee-decedent's injuries do not fall within the limited exception to the 'coming and going' rule that applies when an employee is injured when going to or coming from work on the employer's premises. *Royster v. Culp, Inc.*, 343 N.C. 279, 470 S.E.2d 30 (1996).

3. Employee-decedent did not sustain an injury by accident while in the course and scope of his employment with defendant. Injuries occurring while an employee travels to and from work that do not arise in the course of employment are not compensable. *Barham v. Food World, Inc.*, 300 N.C. 329, 266 S.E.2d 676 (1980).

Plaintiff appeals from the opinion and award of the Commission.

Plaintiff does not challenge the Commission's findings of fact, and they are, therefore, binding on appeal. *Johnson v. Herbie's Place*, 157 N.C. App. 168, 180, 579 S.E.2d 110, 118 (2003); *Okwara v. Dillard Dep't Stores, Inc.*, 136 N.C. App. 587, 591, 525 S.E.2d 481, 484 (2000).

Rather, plaintiff contends that the Commission erred in concluding that compensation was unwarranted. This Court reviews the Commission's conclusions of law *de novo*. *Griggs v. E. Omni Constructors*, 158 N.C. App. 480, 483, 581 S.E.2d 138, 141 (2003).

Plaintiff advances three separate theories on appeal: (1) the decedent's injury arose out of and in the course of employment because defendant LensCrafters maintained and/or controlled the premises where the accident occurred; (2) the injury arose out of and in the course of employment because, even if the decedent was not on the defendant's premises at the time of the accident, he was, nonetheless, performing the work-related activity of opening his employer's store for business at that time; and (3) the Commission erred by not considering, as an alternative basis for awarding compensation, that the decedent's job placed him at an increased risk of harm. We address each of these arguments in turn.

[1] First, plaintiff contends that the decedent suffered an injury arising out of and in the course of employment because defendant LensCrafters controlled and maintained the parking lot where the injury occurred. This is so, plaintiff argues, because Hanes Mall required defendant to pay "for its share" of parking lot maintenance and was expected to direct and control where its employees parked at Hanes Mall. We disagree.

For an injury to be compensable, it must be an "injury by accident arising out of and in the course of employment[.]" N.C. G.S. § 97-2(6) (2001). "Whether an injury arises out of and in the course of . . . employment is a mixed question of fact and law, and our review is thus limited to whether the findings and conclusions are supported by the evidence." *Creel v. Town of Dover*, 126 N.C. App. 547, 552, 486 S.E.2d 478, 481 (1997) (citing *Hoyle v. Isenhour Brick and Tile Co.*, 306 N.C. 248, 251, 293 S.E.2d 196, 198 (1982)).

> The phrase 'arising out of' refers to the requirement that there be some causal connection between the injury and claimant's employment. 'In the course of' refers to the time and place constraints on the injury; the injury must occur 'during the period of employment at a place where an employee's duties are calculated to take him[.]'

*Id.* at 552-53, 486 S.E.2d at 478 (quoting *Powers v. Lady's Funeral Home*, 306 N.C. 728, 730, 295 S.E.2d 473, 475 (1982) (internal citations omitted)).

The "coming and going" rule provides that "injuries occurring while an employee travels to and from work do not arise in the course of employment and thus are not compensable." *Barham v. Food World*, 300 N.C. 329, 332, 266 S.E.2d 676, 678 (1980). A limited exception to the " 'coming and going' rule may arise when an employee is injured when going to or coming from work but is on the employer's premises." *Royster v. Culp, Inc.*, 343 N.C. 279, 281, 470 S.E.2d 30, 31 (1996). "There are numerous cases dealing with parking lot injuries and the vast majority which permit recovery do so on the ground that the employer owned, maintained, provided, controlled, or otherwise exercised dominion over the parking lot, walkway or other area in question." *Barham*, 300 N.C. at 333, 266 S.E.2d at 679; *see also Glassco v. Belk-Tyler*, 69 N.C. App. 237, 316 S.E.2d 334 (1984) (denying compensation to a mall tenant's employee who was injured in the mall parking lot). *Barham* and *Glassco* govern the present analysis.

In *Barham*, the North Carolina Supreme Court held that an injury had not occurred on an employer's premises where an employee slipped and fell on ice while in the parking lot and loading zone in front of her employer's store:

> While the evidence here indicates that defendant Food World instructed its employees not to park in the loading zone, and that occasionally it asked customers to move their cars from the zone, we do not think such evidence rises to that level of control which is necessary to support a determination that this loading zone was a part of defendant Food World's premises. To the contrary, the uncontradicted evidence is to the effect that Food World neither owned nor leased the parking lot or the loading zone. It had no responsibility for the upkeep or maintenance of those areas and had no obligation or authority under its lease with the shopping center to instruct drivers not to park in any particular area. The evidence indicates that the parking lot and loading zone were common areas, and that all of the stores had access to them for the convenience of their customers. We therefore hold that, under the uncontroverted facts of this case, the parking lot and loading zone were not sufficiently under the control of defendant Food World so as to permit the conclusion that those areas constituted a part of the employment premises.

*Barham*, 300 N.C. at 333-34, 266 S.E.2d at 679-80.

Likewise, in *Glassco*, this Court held that a mall tenant's employee was not entitled to compensation when injured in the mall parking lot; in that case

> [t]he landlord retained control over the common areas, including the right to adopt rules and regulations regarding the use of the parking areas by customers and employees. Pursuant to this power, the landlord formulated and furnished a master parking plan designating certain areas for the employees of mall tenants to park.

*Glassco*, 69 N.C. App. at 238, 316 S.E.2d at 335. Under such conditions, this Court held that even where the tenant-employer enforced the owner-landlord's parking conditions against the employee, such enforcement did not rise to the level of control because "[the employer] had no responsibility for the maintenance or upkeep of the designated parking area." *Id.*

In this case, the lease between LensCrafters and the owners of Hanes Mall provided that "LANDLORD shall, at all times, have full control, management and direction of the Common Areas. . . ." The lease defines "Common Areas" to include "parking areas, sidewalks, walkways, roadways, driveways . . . and all other areas and facilities within the Shopping Center which are available for use in common by *occupants* of the Shopping Center and their customers and invitees." Under the lease, the landlord granted to Lenscrafters the "non-exclusive right to use" the common areas, including the parking lot.

Plaintiff urges that LensCrafters exercised control over the parking lot because the "Mall management ceded control over employee parking to the store managers." Plaintiff observes that, at the time of the accident, Hanes Mall had a policy of requiring tenants' employees to park in the more remote areas of the parking lot. Hanes Mall expected store managers to enforce the policy. A "Reference Sheet" provided to tenants stated, "all employees are permitted to park only in the designated YELLOW parking stalls, located on the ends of parking aisles. The store manager is responsible for enforcing this requirement."

Plaintiff's control argument conflicts with *Glassco*. *Glassco* is clear that an employer does not exercise control over a parking lot merely because it enforces a parking scheme developed by its landlord where the employer possesses only a non-exclusive right to use that parking lot. *See Glassco*, 69 N.C. App. at 238, 316 S.E.2d at 335.

With respect to maintenance and upkeep, plaintiff correctly notes that pursuant to the lease between defendant and Hanes Mall defendant was required

> to pay to [Hanes Mall] as its "Common Area Charge," one-half (½) of an amount determined by multiplying the ratio of the square feet of Gross Leasable Area within the PREMISES to the total square feet of Gross Leasable Area within the Mall . . . by the total cost and expense of . . . operating and maintaining the Common Areas on the Developer Parcel. . . .

While mall tenants, such as LensCrafters, paid a "Common Area Charge," the mall hired, paid, and directed the maintenance staff. The mall's maintenance staff did not take instructions from LensCrafters. We are unpersuaded that by sharing in the costs of maintenance with other Hanes Mall tenants, LensCrafters "maintained" the parking lot such that the injury to the decedent occurred on LensCrafters' premises.Plaintiff's first assignment of error is overruled.

[2] Plaintiff next argues that the decedent's injury is compensable, even if not incurred on LensCrafter's premises, because the decedent was performing a work-related activity when the injury occurred. Specifically, plaintiff asserts that the decedent had already begun his "special" managerial job of opening the store because he was holding work-related materials and store keys while walking towards the mall. Plaintiff contends that the present case is analogous to those cases supporting awards of compensation where an employee was injured while on a business trip for an employer, *see Martin v. Georgia Pacific Corp.*, 5 N.C. App. 37, 167 S.E.2d 790 (1969*)*; while running a special errand, *see Powers*, 306 N.C. 728, 295 S.E.2d 473; or while making preparations to begin work, *see Thompson v. Transport Co.*, 32 N.C. App. 693, 236 S.E.2d 312 (1977). We do not agree.

The present case is distinguishable from cases involving traveling employees. Though " 'traveling employees, whether or not on call, usually do receive protection when the injury has its origin in a risk created by the necessity of sleeping and eating away from home,' " *Martin*, 5 N.C. App. at 42, 167 S.E.2d at 793 (quoting 1 Larson, Workmen's Compensation Law, § 25.21, p. 445), the present case does not lend itself to analysis under such a rule.

Nor does the present case present a situation where the decedent was running a special errand for his employer. Though compensation is appropriate where an employee is injured while running a "special

errand" for an employer, in those cases applying the special errand rule, the action undertaken by the employee bestowed some benefit upon the employer other than the employee merely coming to work. *Powers*, 306 N.C. 728, 295 S.E.2d 473 (finding employee to be on a special errand where employee was performing duties incident to performance of late-night, emergency embalming for employer's business); *Felton v. Hospital Guild*, 57 N.C. App. 33, 291 S.E.2d 158 (finding employee to be on a special errand where employee was performing the special task of picking up baked goods for her employer in addition to coming into work), *aff'd*, 307 N.C. 121, 296 S.E.2d 297 (1982).

In this case, the Commission found that the decedent was walking across a parking lot with work-related materials in his possession; upon arrival at his place of employment, decedent was responsible for opening up his employer's store. These facts do not support a conclusion that the decedent was running a special errand. Moreover, no authority exists for the proposition that managers who are responsible for opening or closing a store are *per se* conducting special errands.

The present matter also is distinguishable from a situation where compensation is appropriate because an employee suffered an injury while making "[p]reliminary preparations . . . reasonably essential to the proper performance of some required task or service." *See Thompson*, 32 N.C. App. at 697, 236 S.E.2d at 314. The "preliminary preparations" cases involve an employee performing necessary maintenance upon a vehicle to make it fit for use in commerce by an employer. *See id.* (upholding award where claimant was injured while preparing the truck for inspection by the carrier); *see also Hoffman v. Truck Lines, Inc.*, 306 N.C. 502, 293 S.E.2d 807 (1982) (where plaintiff received an injury while repairing a truck he both leased to defendant and drove for defendant, the injury was compensable as arising out of and in the course of his employment since plaintiff was performing a necessary repair after he was "under load" and since the repair was an act preparatory or incidental to the fulfillment of his duty to make a scheduled delivery within an allotted time). Given the vastly different context of the present case, the "preliminary preparations" cases do not support an award. Plaintiff's second assignment of error is overruled.

[3] Plaintiff's third argument is that the Commission erred by not considering, as an alternative basis for awarding compensation, that decedent's employment with LensCrafters increased his risk and

therefore proximately caused his injury. This argument encompasses three sub-parts. First, the empty condition of the Hanes Mall parking lot increased the risk of injury to the decedent. Second, LensCrafters increased the likelihood of injury to the decedent by not instructing or requiring the employee who struck the decedent to park in the proper location. Third, plaintiff alleges that the decedent's employment with LensCrafters proximately caused his injury because the employee who struck the decedent reasonably believed that LensCrafters condoned horseplay in the parking lot.

A contributing proximate cause of an injury must be a risk inherent in or incidental to the employment, and must be one to which the employee would not have been equally exposed apart from the employment. *Gallimore v. Marilyn's Shoes*, 292 N.C. 399, 404, 233 S.E.2d 529, 533 (1977). Thus, an employee must be at an "increased risk" because of the employment; the " 'causative danger must be peculiar to the work and not common to the neighborhood.' " *Id.* at 404, 233 S.E.2d at 532 (quoting *Harden v. Furniture Co.*, 199 N.C. 733, 735, 155 S.E. 728, 730 (1930)).

As a general rule, traffic hazards are not fairly traceable to employment. *Bryan v. T.A. Loving Co.*, 222 N.C. 724, 729, 24 S.E.2d 751, 754 (1943); *Taylor v. Shirt Co.*, 28 N.C. App. 61, 64-65, 220 S.E.2d 144, 146 (1975), *cert. denied*, 289 N.C. 302, 222 S.E.2d 703 (1976). In *Bryan*, the North Carolina Supreme Court held compensation inappropriate where a station gate guard was struck by a car while coming to work. Although the guard occasionally went into the street to help a patrolman stop traffic, the Court found that the employment was not the proximate cause of the injury where the employee was struck on the same street while coming to work:

> The employee's journey had not been completed. He was still on his way to work. He was master of his own movements. The hazard created by traffic on the highway under the circumstances of this case cannot fairly be traced to the employment. It cannot be said that it was, at the time and place and under the circumstances disclosed, a natural incident of the work. It was not created by the employer. It did not arise out of the exposure occasioned by the nature of the employment. It was neither an ordinary nor an extraordinary risk directly or indirectly connected with the services of the employee. On the contrary, any other person undertaking to cross a public highway under the same or similar circumstances would be subjected to the identical hazard encountered by him.

*Bryan,* 222 N.C. at 729, 24 S.E.2d at 754-55. Likewise, in *Taylor,* this Court held that an employee's injury did not arise in the course of her employment where the employee was struck by an automobile as she attempted to cross a public street in front of her employer's factory while on her way to a private parking lot. *Taylor,* 28 N.C. App. at 64-65, 220 S.E.2d at 146. It was unimportant that employees of the employer constituted a great majority of persons using the street at the time of the accident and that the driver of the car which struck plaintiff had just picked up one of defendant's employees. *Id.*

In this case, the unchallenged findings of the Commission do not necessarily suggest that the decedent was peculiarly susceptible to being struck in the mall parking lot. Moreover, the record indicates that the Commission did, in fact, address whether the decedent's employment with LensCrafters proximately caused his injury. The Commission specifically found that "employee-decedent was not exposed to any danger greater than the public in general." Plaintiff's third assignment of error is therefore overruled.

The opinion and award of the Industrial Commission is

Affirmed.

Judges MARTIN and TYSON concur.