JOANNE MUNOZ, Employee, Plaintiff v. CALDWELL MEMORIAL HOSPITAL, Employer, and ALLIED CLAIMS ADMINISTRATION, Carrier, Defendants

No. COA04-1292

(Filed 5 July 2005)

**1. Workers' Compensation— going and coming rule—traveling salesman exception—home health nurse**

The traveling salesman exception to the going and coming rule applied in a workers' compensation case to a home health nurse injured in an automobile collision while going to a patient's residence. The record supports the Commission's conclusion that plaintiff's employment involved multiple patients with no fixed hours or places of work.

**2. Workers' Compensation— going and coming rule—contractual duty exception—home health nurse**

The contractual duty exception applied in a workers' compensation case to a home health nurse injured in an automobile accident on her way to a patient's house. The parties stipulated that the distance was sufficient for plaintiff to be reimbursed for mileage under her contract.

**3. Workers' Compensation— going and coming rule—exceptions—deviation from direct route—not distinct departure**

A home health nurse's decision to drive to her employer's office to drop off time slips on her way to a patient's residence did not prevent application of the traveling salesman and contractual duty exceptions to the going and coming rule. Even if plaintiff deviated from the most direct route, this deviation does not rise to the level of a distinct departure from her business trip.

**4. Workers' Compensation— average weekly wage—straight average rather than weighted**

The Industrial Commission did not err by using a straight rather than a weighted average to determine the average weekly wage of an injured nurse employed less than a year where the decision was based on the parties' stipulation. Defendants neither cite authority nor demonstrate why a weighted average is to be preferred.

**MUNOZ v. CALDWELL MEM'L HOSP.**

[171 N.C. App. 386 (2005)]

Appeal by defendants from opinion and award entered 28 June 2004 by the North Carolina Industrial Commission. Heard in the Court of Appeals 12 May 2005.

*Charles G. Monnett, III & Associates, by Craig O. Asbill, for plaintiff-appellee.*

*Jones, Hewson & Woolard, by Lawrence J. Goldman, for defendants-appellants.*

TIMMONS-GOODSON, Judge.

Caldwell Memorial Hospital ("Caldwell") and Allied Claims Administration ("Allied") (collectively, "defendants") appeal an opinion and award of the North Carolina Industrial Commission awarding Joanne Munoz ("plaintiff") compensation for injuries resulting from an automobile collision. For the reasons discussed herein, we affirm the opinion and award.

The facts and procedural history pertinent to the instant appeal are as follows: On 5 January 2001, plaintiff began work for Caldwell as a home health care nurse. Plaintiff's position with Caldwell required her to travel each day to an assigned patient's residence to provide care for the patient. Plaintiff provided care for only one patient per day, and her hourly wages began when she reached the patient's home. As part of plaintiff's compensation, Caldwell paid plaintiff excess travel mileage if her patient's residence was more than sixty miles round trip from her own residence.

On 8 January 2001, plaintiff was assigned to care for a patient in Lenoir, North Carolina. While on her way to the patient's residence, plaintiff decided to drop off her time slips at Caldwell's office, which was also located in Lenoir. As plaintiff drove to Caldwell's office, she was involved in an automobile collision and suffered injuries to her head and back. Caldwell denied plaintiff's subsequent worker's compensation claim, contending that the collision did not arise out of and in the course of plaintiff's employment at Caldwell.

On 6 November 2002, the case was heard by North Carolina Industrial Commission Deputy Commissioner Edward Garner, Jr. ("the Deputy Commissioner"). On 10 March 2003, the Deputy Commissioner entered an opinion and award concluding that plaintiff's injuries arose out of and in the course of her employment at Caldwell. Based upon this conclusion, the Deputy Commissioner awarded plaintiff $271.46 per week in compensation.

Defendants appealed the Deputy Commissioner's award to a full panel of the North Carolina Industrial Commission ("the Full Commission"). On 28 June 2004, the Full Commission entered an opinion and award affirming the Deputy Commissioner's prior award. The Full Commission made the following pertinent conclusions of law:

5. In this case, the "traveling salesman" exception applies because plaintiff was injured while en route to visit a patient pursuant to a job with no fixed hours or place of work. Plaintiff's job required that she report directly from her home to the patient's home for which she would be caring each day rather than beginning her day at her employer's fixed place of business. Plaintiff's job required that she visit with only one patient per day, but during the four days that plaintiff had been employed, she had visited three different patients at three different residences, and worked varying hours each day. . . . [U]nder these circumstances, the "traveling salesman" exception would apply to each day upon leaving her house to travel to her patient's home because plaintiff did not have a fixed work place or fixed work hours.

6. Plaintiff's employment was of a nature that failed to establish a fixed work place or fixed work hours, and plaintiff's mere intention to drop her pay slips off while traveling the route to her patient's home that would take her by her employer's place of business on January 8, 2001, did not constitute a "distinct" and "total" departure on a personal errand. Accordingly, the traumatic brain injury and other injuries resulting from plaintiff's automobile accident on January 8, 2001, are compensable as they arose out of and in the course of her employment pursuant to the "traveling salesman" exception to the "going and coming" rule.

. . . .

8. Plaintiff's injuries sustained while traveling to work on January 8, 2001, are compensable pursuant to the "contractual duty" exception because [Caldwell] was under an active contractual duty to reimburse plaintiff for her mileage at the time of her automobile collision. Pursuant to this mileage plan, plaintiff was paid mileage for the amount of miles she was required to travel in excess of 60 miles roundtrip to a single patient's home. Thus, the "contractual duty" exception would apply to a home health care nurse visiting a single patient over the course of a day at the time that nurse traveled beyond a 30-mile radius of her listed home address.

9. Plaintiff's mere intent to drop her pay slip off, as required, while traveling the route to her patient's home that would take her by her employer's place of business does not constitute a "distinct" or "total" departure on a personal errand.

Based upon these conclusions of law, the Full Commission awarded plaintiff $271.46 per week in compensation. Defendants appeal.

---

The issues on appeal are whether the Full Commission erred by: (I) concluding that plaintiff's injury arose out of and in the course of her employment; and (II) determining plaintiff's average weekly wage.

**[1]** Defendants first argue that the Full Commission erred by concluding that plaintiff's injuries arose out of and in the course of her employment. Defendants assert that because the collision giving rise to plaintiff's injuries occurred while plaintiff was driving her personal vehicle to work, plaintiff's injuries are not compensable. We disagree.

This Court's review of a decision of the Full Commission is limited to determining whether competent evidence supports the Full Commission's findings of fact, and whether the Full Commission's findings of fact support its conclusions of law. *Adams v. AVX Corp.*, 349 N.C. 676, 681, 509 S.E.2d 411, 414 (1998). "Whether an injury arises out of and in the course of a claimant's employment is a mixed question of fact and law[.]" *Creel v. Town of Dover*, 126 N.C. App. 547, 552, 486 S.E.2d 478, 481 (1997).

The "going and coming rule" states that "injuries sustained by an employee while going to or from work are not ordinarily compensable" because the injuries do not arise out of or in the course of employment. *Bass v. Mecklenburg County*, 258 N.C. 226, 231-32, 128 S.E.2d 570, 574 (1962) (citations omitted); *Hunt v. Tender Loving Care Home Care Agency, Inc.*, 153 N.C. App. 266, 269, 569 S.E.2d 675, 678, *disc. review denied*, 356 N.C. 436, 572 S.E.2d 784 (2002). The rationale for this rule is that "the risk of injury while traveling to and from work is one common to the public at large," *Creel*, 126 N.C. App. at 555, 486 S.E.2d at 482, and "[a]n employee is not engaged in the business of the employer while driving his or her personal vehicle to the place of work or while leaving the place of employment to go home." *Hunt*, 153 N.C. App. at 269, 569 S.E.2d at 678. Nevertheless, the going and coming rule is subject to exceptions. Such exceptions have been recognized where:

(1) an employee is going to or coming from work but is on the employer's premises when the accident occurs (premises exception); (2) the employee is acting in the course of his employment and in the performance of some duty, errand, or mission thereto (special errands exception); (3) an employee has no definite time and place of employment, requiring her to make a journey to perform a service on behalf of the employer (traveling salesman exception); or (4) an employer contractually provides transportation or allowances to cover the cost of transportation (contractual duty exception).

*Stanley v. Burns Int'l Sec. Servs.*, 161 N.C. App. 722, 725, 589 S.E.2d 176, 178 (2003) (citations omitted).

In the instant case, the Full Commission determined that both the traveling salesman exception and the contractual duty exception apply. Defendants contend that the traveling salesman exception does not apply because on the date of the collision, plaintiff had a fixed job location at the residence of her patient. In support of this contention, defendants cite this Court's refusal to apply the traveling salesman exception to the facts in *Hunt*. However, we conclude that *Hunt* is distinguishable from the instant case.

In *Hunt*, we noted that "[i]f travel is contemplated as part of the employment, an injury from an accident during travel is compensable." 153 N.C. App. at 269, 569 S.E.2d at 678. Thus, under the traveling salesman exception, "employees with no definite time and place of employment . . . are within the course of their employment when making a journey to perform a service on behalf of their employer." *Creel*, 126 N.C. App. at 556-57, 486 S.E.2d at 483 (citations omitted). "The applicability of the 'traveling salesman' rule to the facts [of a case] depends upon the determination of whether [the] plaintiff had fixed job hours and a fixed job location." *Hunt*, 153 N.C. App. at 270, 569 S.E.2d at 678.

Like the plaintiff in the instant case, the plaintiff in *Hunt* was a nursing aide whose work required her to travel to a patient's residence rather than report to her employer's premises. However, unlike the plaintiff in the instant case, the plaintiff in *Hunt* had worked for her employer for "over two years" and had worked "solely" with the same patient at the same address. *Id.* at 270, 569 S.E.2d at 678-79. Based upon these facts, this Court determined in *Hunt* that the plaintiff's "employment did not require attending to several patients, at different locations with no fixed work location." *Id.* at 270, 569 S.E.2d at 679.

In the instant case, plaintiff had only been employed at Caldwell for four days at the time of the collision, and she had been assigned to three different patients at different locations on each date of her employment. Although the parties stipulated that "plaintiff . . . would visit only one patient per day[,]" the parties also stipulated that "[s]ome of [Caldwell's] home health care nurses were limited to a single patient and some would see multiple patients[.]" The parties further stipulated that plaintiff's wages would "begin upon reaching a patient's residence." Thus, unlike in *Hunt*, plaintiff was not assigned "solely" to the patient she was en route to assist on the date of her injury. Instead, the record supports the Full Commission's determination that plaintiff's employment with Caldwell involved multiple patients, and that plaintiff had "no fixed hours or place of work." Therefore, we conclude that the Full Commission did not err by determining that the traveling salesman exception applies to the instant case.

**[2]** Defendants also contend that the Full Commission erred by determining that the contractual duty exception applies to the instant case. In *Hunt*, this Court stated that "where an employer provides transportation or allowances to cover the cost of transportation, injuries occurring while going to or returning from work are compensable" under the contractual duty exception. *Id.*

> For a claim to fall within this exception, the transportation must be provided as a matter of right as a result of the employment contract. If the transportation is provided permissively, gratuitously, or as an accommodation, the employee is not within the course of employment while in transit. Where the cost of transporting employees to and from work is made an incident to the contract of employment, compensation benefits have been allowed.

*Id.* (citations omitted).

In the instant case, plaintiff's employment with Caldwell included a mileage compensation plan "for approved patient care, education, and business miles." The plan provided that "[f]or those having only one patient [per day], mileage will be paid if greater than 60 miles roundtrip from their listed home address." In *Hunt*, we rejected the plaintiff's claim that her accident was covered under a similar compensation policy, noting that "[t]he parties stipulated that [the] plaintiff was not compensated for her travel because she did not travel over" the relevant amount of mileage necessary for compensation

under the policy. *Id.* at 271, 569 S.E.2d at 679. However, in the instant case, the parties stipulated that "[t]he distance between the residence of [] plaintiff . . . and the residence of the patient she was visiting on January 8, 2001, was in excess of 60 miles round trip[,]" and the parties also stipulated that plaintiff "would be reimbursed as per [the mileage compensation plan] for mileage to a patient's residence in Lenoir." The Full Commission noted these stipulations prior to determining that the contractual duty exception applies to the instant case. We conclude that the Full Commission did not err in its determination.

**[3]** Defendants maintain that neither the traveling salesman nor the contractual duty exceptions should apply to plaintiff's claim because at the time of the collision, plaintiff was driving to Caldwell's office rather than her patient's residence. We disagree.

This Court has noted that the traveling salesman exception does not apply where the evidence demonstrates a distinct departure by the employee on a personal errand. *Dunn v. Marconi Communications, Inc.*, 161 N.C. App. 606, 612, 589 S.E.2d 150, 155 (2003). Similarly, we have also noted that "the 'contractual duty' exception can be negated if the Commission finds that the employee, while using an employer-provided vehicle, abandoned his employment-related purpose for using the vehicle." *Id.* However, our courts have further recognized that workers' compensation rules are subject to "liberal construction," and therefore, " '[w]here any reasonable relationship to employment exists, or employment is a contributory cause, the court is justified in upholding the award as "arising out of employment." ' " *Kiger v. Service Co.*, 260 N.C. 760, 762, 133 S.E.2d 702, 704 (1963) (quoting *Allred v. Allred-Gardner, Inc.*, 253 N.C. 554, 557, 117 S.E.2d 476, 479 (1960)).

In the instant case, defendants contend that plaintiff's route the date of the collision was not the most direct to her patient's residence, and that at the time of the collision, plaintiff had "doubled back" to drop off her time slips. However, we note that in *Creel*, this Court agreed that " '[a]n identifiable deviation from a business trip for personal reasons takes the employee out of the course of his employment until he returns to the route of the business trip, unless the deviation is so small as to be regarded as insubstantial.' " 126 N.C. App. at 557, 486 S.E.2d at 483 (quoting 1 Arthur Larson & Lex K. Larson, *Larson's Workmen's Compensation Law* § 19.00, at 4-352 (1996)). Moreover, in *Smith v. Central Transport*, 51 N.C. App. 316, 321, 276 S.E.2d 751, 754 (1981), we held that an employee's injury

**MUNOZ v. CALDWELL MEM'L HOSP.**

[171 N.C. App. 386 (2005)]

from an automobile collision arose out of and in the course of his employment, and was not incurred during a distinct departure, even though the collision occurred "approximately four and a half hours after [the employee] had delivered his load of chemicals, and while he was . . . heading in a direction which would have been opposite to the most direct route back" to his employer's business. In the instant case, we conclude that even if plaintiff deviated from the most direct route of her travel in order to drop off her time slips, this deviation does not rise to the level of a distinct departure. Plaintiff stipulated that "[s]he was on her way to see a patient" when the collision occurred, but because "[s]he had extra time . . . she decided to drop off [her] time slips at" Caldwell's office. Plaintiff also stipulated that she was required to drop her time slips off at Caldwell's office by 5:00 p.m. on Mondays, including Monday, 8 January 2001, the date of the collision. Although we note that plaintiff would not be reimbursed for the mileage she incurred in driving to drop off her time slips, we also note that Caldwell's office was located in the same town as plaintiff's patient's residence. In light of the foregoing, we conclude that the Full Commission correctly determined that plaintiff's "mere intention to drop her pay slips off while traveling the route to her patient's home" did not prevent application of the traveling salesman and contractual duty exceptions. Accordingly, we overrule defendants' first argument.

[4] Defendants' final argument is that the trial court erred by determining plaintiff's average weekly wage. N.C. Gen. Stat. 97-2(5) (2003) governs the determination of an injured worker's average weekly wage, and it provides in pertinent part as follows:

Average Weekly Wages.—"Average weekly wages" shall mean the earnings of the injured employee in the employment in which he was working at the time of the injury during the period of 52 weeks immediately preceding the date of the injury . . . . Where the employment prior to the injury extended over a period of fewer than 52 weeks, the method of dividing the earnings during that period by the number of weeks and parts thereof during which the employee earned wages shall be followed; provided, results fair and just to both parties will be thereby obtained. Where, by reason of a shortness of time during which the employee has been in the employment of his employer or the casual nature or terms of his employment, it is impractical to compute the average weekly wages as above defined, regard shall be had to the average weekly amount which during the 52 weeks previous to the injury was being earned by a person of the same

grade and character employed in the same class of employment in the same locality or community.

But where for exceptional reasons the foregoing would be unfair, either to the employer or employee, such other method of computing average weekly wages may be resorted to as will most nearly approximate the amount which the injured employee would be earning were it not for the injury.

In the instant case, prior to the hearing, the parties stipulated in pertinent part as follows:

3. With respect to average weekly wage, during the year 2000, [Caldwell's] PRN (as needed) LPNs worked:

 a. If each week is averaged, the total average hours per week is 23.94.

 b. With a weighted average (weeks with 10 LPNs working would receive twice the weight as weeks with 5 LPNs working), the average hours per week is 22.76.

Based in part upon this stipulation, the Full Commission concluded in pertinent part as follows:

11. In this case, plaintiff's average weekly wage is best determined by employing another method as set forth in N.C. Gen. Stat. § 97-2(5) because plaintiff's employment prior to her injury extended over a period of less than 52 weeks. Accordingly, plaintiff's average weekly wage shall be that of a similar situated employee who has been employed by [Caldwell] for more than one year. Since the parties stipulated that other LPNs worked an average of 23.94 hours per week, at $17.00 per hour for 23.94 hours per week, plaintiff's average weekly wages are $406.98, which yields a compensation rate of $271.46 per week.

Defendants contend that the Full Commission should have used the weighted average hours detailed in the stipulation rather than the straight average. However, notwithstanding their assertion that the weighted average "more accurately reflects expected hours of a PRN LPN," defendants cite no authority in support of their argument and fail to demonstrate why the weighted average is preferred. As discussed above, our review on appeal of an opinion and award of the Full Commission is limited to determining whether competent evidence supports the Full Commission's findings of fact, and whether those findings of fact support the Full Commission's conclusions of

law. *Adams*, 349 N.C. at 681, 509 S.E.2d at 414. In the instant case, the Full Commission's conclusion of law indicates that it based its decision to use the straight average upon the stipulation agreed to by both parties. Thus, in light of the foregoing, we conclude that the Full Commission did not err in its determination regarding plaintiff's average weekly wage. Therefore, we overrule defendants' final argument, and accordingly, we affirm the Full Commission's opinion and award.

Affirmed.

Judges McCULLOUGH and STEELMAN concur.