***********
Following consideration of the additional evidence received before Deputy Commissioner Griffin, the Full Commission amends is April 28, 2009 Opinion and Award as described herein.
 ***********
The Full Commission adopts the Stipulations set out in the April 28, 2009 Opinion and Award as if there were set out herein.
 *********** *Page 2 
Based upon all of the competent evidence of record the Full Commission makes the following:
 FINDINGS OF FACT
1. The Full Commission adopts the Findings of Fact set out in the April 28, 2009 Opinion and Award as if they were set out herein.
2. Plaintiff received $1050.00 in payment from defendant-employer for the work performed between September 25, 2006 and September 29, 2006 (the "Beach Mountain work"). Plaintiff testified that, in his recollection, he was assisted by Thomas Brown and Nathan Green in performing that work. However, plaintiff had no recollection of, and no documentary evidence concerning, the amount of money he paid either Mr. Brown or Mr. Green for their assistance with the Beach Mountain work. Because of memory problems arising from his injury, plaintiff deferred to Mr. Brown concerning the details of the Beach Mountain work, including who performed the work and how much they were paid.
3. Thomas Brown testified that Nathan Green was not involved in the Beach Mountain work in any way. Mr. Brown further testified that he had known plaintiff for many years, and that he "was more or less just helping him out" with the Beach Mountain work, and so Mr. Brown had accepted only a payment of $100.00 for his assistance with the five days of work. Mr. Brown was unable to provide any documentary evidence of that payment.
4. Plaintiff testified, and the Full Commission finds as fact, that prior to the Beach Mountain work, plaintiff had been earning between $12.00 and $16.00 per hour for roofing work. At the time, plaintiff had eight to nine years of experience as a roofer. *Page 3 
5. Thomas Brown testified, and the Full Commission finds as fact, that as an experienced roofer with ten to fifteen years of experience, Mr. Brown was earning approximately $14.00 per hour for roofing work.
6. Kenneth Dale Bowman, the owner of defendant-employer, testified that an average roofer working in the same geographic area as plaintiff would probably earn between $10.00 and $12.00 per hour.
7. The Full Commission finds, based on the greater weight of the evidence, that a person of the same grade and character as plaintiff employed in the same class of employment in the same locality or community would have been earning an average of $14.00 per hour during the 52 weeks prior to plaintiff's October 3, 2006 injury by accident.
8. Plaintiff testified, and the Full Commission finds as fact, that defendant-employer expected plaintiff and all of plaintiff's co-workers to begin work at 9:00 am "on the dot," no earlier and no later; that defendant-employer did not want plaintiff to work past 5:00 pm "so it didn't disturb the homeowners"; and that defendant-employer allowed plaintiff and the other workers no more than thirty minutes for lunch. The Full Commission accordingly finds that, while working for defendant-employer, plaintiff worked approximately an eight-hour workday.
 ***********
Based upon the foregoing findings of fact, the Full Commission concludes as follows:
 CONCLUSIONS OF LAW
1. The Full Commission adopts the Conclusions of Law set out in the April 28, 2009 Opinion and Award as if they were set out herein.
2. The Workers' Compensation Act defines "average weekly wage" as follows:
 "Average weekly wages" shall mean [Method 1] the earnings of the injured employee in the employment in which he was working *Page 4 
at the time of the injury during the period of 52 weeks immediately preceding the date of the injury . . . divided by 52; [Method 2] but if the injured employee lost more than seven consecutive calendar days at one or more times during such period, although not in the same week, then the earnings for the remainder of such 52 weeks shall be divided by the number of weeks remaining after the time so lost has been deducted. [Method 3] Where the employment prior to the injury extended over a period of fewer than 52 weeks, the method of dividing the earnings during that period by the number of weeks and parts thereof during which the employee earned wages shall be followed; provided, results fair and just to both parties will be thereby obtained. [Method 4] Where, by reason of a shortness of time during which the employee has been in the employment of his employer or the casual nature or terms of his employment, it is impractical to compute the average weekly wages as above defined, regard shall be had to the average weekly amount which during the 52 weeks previous to the injury was being earned by a person of the same grade and character employed in the same class of employment in the same locality or community. [Method 5] But where for exceptional reasons the foregoing would be unfair, either to the employer or employee, such other method of computing average weekly wages may be resorted to as will most nearly approximate the amount which the injured employee would be earning were it not for the injury.
N.C. Gen. Stat. § 97-2(5) (bracketed method numbers added). "This statute provides a hierarchy of the methods for computing the average weekly wage of an injured employee, with the primary method being the first option listed." Boney v. Winn Dixie, Inc.,163 N.C. App. 330, 593 S.E.2d 93 (2004).
3. Because plaintiff was not employed by defendant-employer for 52 weeks prior to his injury, the first and second methods for calculating average weekly wage set out in N.C. Gen. Stat. § 97-2(5) are expressly inapplicable.See N.C. Gen. Stat. § 97-2(5).
4. There is sufficient evidence before the Full Commission to make use of the third method for calculating average weekly wage as set out in N.C. Gen. Stat. § 97-2(5) only if the testimony of Thomas Brown concerning the amount of money retained by plaintiff for the Beach Mountain work is deemed to be credible. However, even if Mr. Brown's testimony were deemed *Page 5 
to be credible, plaintiff's average weekly wage would be $950.00, a result that would not be fair and just to both parties, as it is based on Mr. Brown's willingness to accept only $100.00 for his assistance on that particular job lasting five days because of his friendship with plaintiff. It is not plausible that Mr. Brown would be financially able to continue to offer his services to plaintiff at that rate over the course of an entire year. Therefore, regardless of the credibility of Mr. Brown's testimony, the third method for calculating average weekly wage cannot be used in this case. See N.C. Gen. Stat. § 97-2(5).
5. It follows that plaintiff's average weekly should be calculated based on the fourth method set forth under N.C. Gen. Stat. § 97-2(5). The Full Commission has found that a person of the same grade and character as plaintiff employed in the same class of employment in the same locality or community would earn an average of $14.00 per hour, and that such a person, if employed by defendant-employer as plaintiff was, would work for eight hours a day. The Full Commission accordingly concludes that plaintiff's average weekly wage at the time of his injury by accident was $560.00, which yields a compensation rate of $373.33 per week. See N.C. Gen. Stat. §§ 97-2(5), 97-29;Munoz v. Caldwell Memorial Hosp.,171 N.C.App. 386, 614 S.E.2d 448 (2005).
 ***********
Based upon the foregoing stipulations, findings of fact and conclusions of law, the Full Commission enters the following:
 A W A R D
1. Subject to a reasonable attorney's fee approved herein, defendants shall pay plaintiff temporary total disability compensation at a weekly rate of $373.33 beginning October 3, 2006 *Page 6 
and continuing until July 20, 2007. Said amount having accrued, it shall be paid to plaintiff in one lump sum.
2. Subject to a reasonable attorney's fee approved herein, defendants shall pay plaintiff for the 10% permanent partial impairment rating to the back. Said amount having accrued, it shall be paid to plaintiff in one lump sum.
3. Defendants shall pay the medical expenses incurred or to be incurred by plaintiff as a result of his back condition, including the surgery performed by Dr. VanDerVeer, when bills for the same have been submitted according to proper Industrial Commission procedures.
4. A reasonable attorney's fee of 25% of the compensation due plaintiff under Paragraphs 1 and 2 of this AWARD is approved for plaintiff's counsel and shall be paid by defendants as follows: 25% of the accrued compensation due plaintiff shall be deducted from said compensation and shall be paid in one lump sum directly to plaintiff's counsel.
5. IT IS HEREBY ORDERED that defendants shall pay an expert witness fee in the amount of $560.00 to Dr. Craig A. VanDerVeer for his deposition testimony, if not already paid.
6. Defendants shall pay the costs.
This the 28th day of October, 2009.
S/___________________ DIANNE C. SELLERS COMMISSIONER
CONCURRING:
 S/___________________ DANNY LEE McDONALD COMMISSIONER
 S/___________________ BERNADINE BALLANCE COMMISSIONER